**Greg F. LARSON, petitioner, Appellant,**

v.

**Vera M. SCHMIDT, Respondent.**

**No. C4–86–824.**

Court of Appeals of Minnesota.

Feb. 3, 1987.

M. Guy Ross, Minneapolis, for appellant.

Ronald S. Goldser, Zimmerman, Caplan & Reed, Minneapolis, for respondent.

Heard, considered and decided by NIERENGARTEN, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

PARKER, Judge.

Greg Larson appeals from the dismissal, with prejudice, of his suit for adjudication of parentage of his biological child, contending the trial court erred in failing to find him a presumed father under Minn. Stat. § 257.55, subd. 1(d) (1984). Vera Schmidt filed a notice of review, contending the trial court abused its discretion in failing to award attorney's fees. We affirm in part, reverse in part and remand.

## FACTS

Greg Larson and Vera Schmidt conceived a child, L.S., born November 31, 1981. Larson was at the hospital when the child was born, but did not then or later sign papers that would have given him proof of parentage. The parties never married or established a household together. During the first three years after the child's birth, Larson was in chemical dependency treatment four times. Since the latter part of 1984, he has been drug-free, living in a halfway house. Schmidt has always maintained a home for the child and has provided most of its support, with Larson contributing approximately $1,500 in support over the last three years.

In October 1985 Larson filed a summons and petition in Hennepin County District Court, alleging that he was the child's father and asking for an adjudication of paternity. Schmidt moved for dismissal based on the three-year statute of limitations for non-presumed fathers as set forth in Minn.Stat. § 257.58 (1980) [1] or, alternatively, for change of venue, limitation or denial of visitation, current and retroactive child support, health and life insurance for the child, and attorney's fees.

In response to Schmidt's motion to dismiss, Larson submitted a memorandum arguing that § 257.58 (1980) did not bar his

---

1. A recent amendment to this section removed the three-year statute of limitations for non-presumed fathers, effective August 1, 1985; because L.S. was born before that date, this amendment is not applicable here. 1985 Minn. Laws, ch. 131, § 5.

cause of action because he was a presumed father under Minn.Stat. 257.55, subd. 1(d).[2] In the alternative, he contended that § 257.58 (1980) was unconstitutional.

Schmidt's motion for change of venue was granted, and a hearing was held in Anoka County District Court in December 1985. Based on the affidavits and trial briefs submitted by the parties, the trial court dismissed Larson's case with prejudice, concluding that he did not meet the standards for a presumption of fatherhood under § 257.55, subd. 1(d), because he had not received the child into his home and that his cause of action was therefore barred by the three-year statute of limitations for non-presumed fathers under § 257.58. The court also concluded that the statutory distinction between presumed and non-presumed fathers did not violate Larson's fourteenth amendment right to equal protection.

## ISSUES

1. Did the trial court err in strictly construing the phrase, "receives the child into his home," to require actual physical custody?

2. Did the trial court abuse its discretion in failing to award attorney's fees?

## DISCUSSION

### I

Based on section 4 of the Uniform Parentage Act (UPA), Minn.Stat. § 257.55 (1984) provides, in pertinent part:

Subdivision 1. A man is *presumed* to be the natural father of a child if:

\* \* \* \* \* \*

(d) While the child is under the age of majority, he *receives the child into his home* and openly holds out the child as his natural child \* \* \*.

(Emphasis added).

The trial court concluded that Larson had not raised the presumption of father-

hood under this section and therefore his cause of action was barred under Minn. Stat. § 257.58. In its memorandum the trial court noted that while it was clear Larson had openly held out L.S. as his natural child while L.S. was under the age of majority, the issue remained whether he had "receive[d] the child into his home."

It is apparent that the trial court struggled to find a standard to guide it in applying this somewhat cryptic phrase. Noting that Minnesota case law had not yet interpreted the phrase, the trial court turned to a California adoption case, *Michael U. v. Jamie B.*, 39 Cal.3d 787, 705 P.2d 362, 218 Cal.Rptr. 39 (1985). In *Michael U.* the California court of appeals ruled that a natural father could acquire presumed-father status by receiving his child into his home if "he actually acquired physical custody." *Id.* at 791, 705 P.2d at 364, 218 Cal.Rptr. at 41. Interpreting this to be a threshold requirement, the trial court applied it to the case at hand, concluding that because Larson had never had physical custody, he had not "receive[d] the child into his home" within the meaning of § 257.55.

We find this standard to be overly strict and one that does not accurately reflect the California case law. In *Michael U.* the California court was articulating an extreme, rather than threshold, requirement of receipt of the child into one's home. In that case, actual physical custody was the natural father's *only* means of establishing a relationship with the child, because the natural mother had already given the child up for adoption.

A more accurate interpretation of California case law is found in the long line of California cases construing a similar phrase, "received the child into his family," from former California Civil Code § 230 (now replaced by the UPA provision at

2. Minn.Stat. § 257.57, subd. 2 (1984), provides, in pertinent part: "An action to determine the existence or nonexistence of the father and child relationship presumed under section 257.- 55, subdivision 1, clause (d) \* \* \* may be brought at any time by \* \* \* a man alleged or alleging himself to be the father \* \* \*."

issue here).[3] Although Civil Code § 230 presupposed the fact of biological parenthood, unlike the UPA provision, the case law construing it is instructive where, as here, biological parenthood is undisputed. In *In re Richard M.*, 14 Cal.3d 783, 537 P.2d 363, 122 Cal.Rptr. 531 (1975), the California Supreme Court provided a history of the judicial interpretation of the word "receiving" in California:

> California courts have generally adopted an equally liberal interpretation of the concept of "receiving" as used in the statute. This requirement is satisfied by evidence that the father *accepted the child as his own, usually demonstrated by an actual physical acceptance of the child into the father's home to the extent possible under the particular circumstances of the case.* Thus the father receives the child into his family when he temporarily resides with the mother and child, even for a very brief period.
>
> The statutory receipt requirement is also fulfilled by the father's acceptance of the child into his home for occasional temporary visits.
>
> Nor have the courts been strict in insisting that the child be actually physically present in the father's home; a constructive reception may suffice.

*Id.* at 794–95, 537 P.2d at 369–70, 122 Cal. Rptr. at 537–38 (emphasis added) (citations omitted).

Applying these principles, the *Richard M.* court held that the presumption of fatherhood was raised because it was undisputed that the mother and the child lived with the father for two to four weeks after the child's birth while the father and paternal grandmother helped care for the infant, and because subsequently the child generally spent every other weekend at his father's home until his remarriage, when the visits were extended to three or four days

and sometimes longer. *Id.* at 795, 537 P.2d at 370, 122 Cal.Rptr. at 538.

■ We find the standard articulated by the *Richard M.* court to be consistent with current Minnesota law. In deciding whether a paternity action could be commenced after the death of the putative father to allow inheritance by the child born out of wedlock, the Minnesota Supreme Court ruled in favor of liberal construction of paternity statutes:

> [A]lthough our paternity statute [§§ 257.251 to 257.33] is * * * in derogation of the common law, we follow the principle that the statute should not be strictly construed but instead should be liberally construed to give effect to its remedial and humanitarian purposes. This approach is consistent with the strong thrust of modern law to accord children born out of wedlock the same legal status as other children.

*Weber v. Anderson*, 269 N.W.2d 892, 894–95 (1978) (footnote omitted).

The trend begun in *Weber* was closely followed by Minnesota's 1980 adoption of the Uniform Parentage Act, Minn.Stat. §§ 257.51–.74 (1980), which heralded a new openness in recognizing the parent-child relationship regardless of marriage. *See, e.g.*, Minn.Stat. § 257.53 ("The parent and child relationship may exist regardless of the marital status of the parents"). Although not applicable here, in 1985 the legislature went even further, lifting the three-year statute of limitations on paternity suits by non-presumed fathers. 1985 Minn. Laws, ch. 131, § 5.

Finally, we find instructive the Commissioner's Comment to the Uniform Parentage Act, which indicates a common-sense approach. It states that in the situations described in subdivision 1, "substantial evidence points to a particular man as being the father of the child and formal proceed-

---

**3.** Former California Civil Code § 230 read, "The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth. * * * " (as quoted in *In Re Richard M.*, 14 Cal.3d 783, 787 n. 1, 537 P.2d 363, 365 n. 1., 122 Cal.Rptr. 531, 533 n. 1 (1975)).

ings to establish paternity are not necessary. A presumption of paternity arises * * *." Unif. Parentage Act, Commissioner's Comment to § 4, 9A U.L.A. 591 (1979).

█ Guided by this principle, as well as the current of Minnesota law begun in *Weber,* we adopt the California standard as articulated in *Richard M.* We hold that a man who is the undisputed biological father of a child satisfies the requirement in § 257.55, subd. 1(d), of "receiv[ing] the child into his home" by accepting the child into his home to the extent possible under the particular circumstances of the case. Satisfaction of this flexible requirement, along with the other requirements of subdivision 1(d), operates to raise the presumption of fatherhood for other purposes of the Act.

Turning to the case at hand, Larson claimed by affidavit that for the first year and a half of the child's life, Schmidt and the child stayed about two nights per week with him; that before he entered the halfway house, he spent a "good deal of time" with Schmidt and the child; that since then the child visited him at the halfway house three or four times; and that "a couple times per week" he spent the morning with Schmidt and the child.

He also claimed that he attended the child's baptism as its father and hosted a dinner afterward at his residence; that he has told his family and friends the child was his and the child has "spent numerous occasions" at his parents' house; that he and the child went to an amusement park in summer 1985 with his brother, sister and other daughter; and that he and his sister arranged a surprise third birthday party for the child. Finally, he claimed that Schmidt has at times refused to let him see or talk to the child, and that he has contributed approximately $1,500 in child support.

These claims were largely undisputed by Schmidt. She stated that Larson's involvement with the child had been limited; that she could remember only rare occasions that he had ever been left alone with the child while it was awake; that during the child's first year, they saw Larson "rarely" or "little;" that during the child's second year Larson did some overnight babysitting for the child on "several occasions" at his brother's house; and that Larson took the child to an amusement park once. However, she also stated that she and Larson had "frequent conversations" about Larson formalizing his "right" to be the father of the child and that they would occasionally attempt to reconcile and then "after several weeks of successful reconciliation" the relationship would break down again.

█ Under these facts, we reverse the trial court and hold that Larson is a presumed father as a matter of law. It is undisputed that he is the child's biological father and, as the trial court acknowledged, there is no question but that Larson has held L.S. out as his natural child. Under the above-described standard, he has also received the child into his home, meaning that he has accepted L.S. as his own, by physically accepting the child into his home to the extent possible under these particular circumstances. In this case, where Larson lives in a group home as part of his rehabilitation, extended or even overnight visits are not possible. However, Larson has made this child a part of his family and has increasingly acknowledged his financial responsibility to it. We also note that Schmidt does not deny that she has at times denied him visitation.

While these circumstances are not ideal, they are sufficient to meet the threshold requirements for presumption of fatherhood under § 257.55, subd. 1(d), which must be liberally construed to give effect to the statute's remedial and humanitarian purpose. As a presumed father, Larson's suit is not barred by any statute of limitations. *See* Minn.Stat. § 257.57, subd. 2. (1984). We therefore remand for an adjudication of paternity and further hearings involving the disposition of visitation, child support and related questions.

In light of this holding, we do not reach Larson's contention that Minn.Stat. § 257.-58 (1980) violates the fourteenth amendment guarantee of equal protection.

Schmidt filed a notice of review and appeals the trial court's denial of attorney's fees authorized under Minn.Stat. § 518.14 (1984), contending the trial court failed to make findings as to the financial circumstances of the parties. Considering the evidence of Larson's financial circumstances, fully set forth in his affidavit, we find no abuse of the trial court's broad discretion in this matter. We do not consider Schmidt's related contention that the trial court abused its discretion in failing to award her attorney's fees under Minn.Stat. § 549.21 (1984), because that statute was not at issue before the trial court.

## DECISION

Affirmed in part, reversed in part and remanded.