**Diana S. WILSON and County of Olmsted, Petitioners, Appellants,**

v.

**Craig E. SPEER, Respondent.**

**No. C8–92–2147.**

Court of Appeals of Minnesota.

May 25, 1993.

Review Granted July 19, 1993.

Raymond F. Schmitz, Olmsted County Atty., Kathleen A. Needham, Asst. County Atty., Rochester, for appellants.

Robert R. Benson, Joerg & Benson Law Offices, Preston, for respondent.

Considered and decided by PETERSON, P.J., and HUSPENI and RANDALL, JJ.

## OPINION

HUSPENI, Judge.

Appellants County of Olmsted and Diana S. Wilson contend the court abused its discretion in denying motions (1) to establish respondent's child support obligation pursuant to Minn.Stat. § 518.551, subd. 5 (Supp.1991); and (2) to order respondent to reimburse the county for AFDC benefits provided to Wilson. Appellants claim the executed declaration of parentage provides a sufficient basis to order current guideline child support and reimbursement. We agree, and accordingly reverse and remand.

## FACTS

Appellant Diana S. Wilson gave birth to a child on January 5, 1988. Wilson received Aid to Families with Dependent Children (AFDC) through Fillmore County. Wilson alleged respondent Craig E. Speer fathered the child. On June 22, 1988, Wilson and Speer signed a declaration of parentage which stated:

> I understand that in signing this Declaration of Parentage, this Declaration has the same effect as an Adjudication of Paternity and may be used as a basis to secure a Court Order for support under [Minn.Stat. §§] 257.51 to 257.74.

Fillmore County did not obtain a court order for child support. It did, however, receive some reimbursement from Speer before Wilson moved to another state to continue her relationship with Speer. She later returned to Minnesota without Speer and established residency in Olmsted County.

Olmsted County obtained the declaration of parentage from Fillmore County and attempted to negotiate with Speer to set current child support and arrange for reimbursement of AFDC. Speer agreed to voluntarily pay $200 per month child support, an amount less than his guideline support obligation. Since commencing payments in November 1990, Speer has remained current under the terms of the agreement. The parties also agreed to visitation as

established in a written agreement executed in the autumn of 1991.

Unable to reach a final agreement on child support, Olmsted County in June 1992 moved for an order setting child support pursuant to Minn.Stat. § 518.551, subd. 5 (Supp.1991), and for reimbursement of AFDC benefits paid for the support of the child. Speer was an active member of the U.S. Navy and stationed in Maine when appellants brought their motions and Speer sought a stay of proceedings pursuant to the Soldiers' and Sailors' Civil Relief Act of 1940. 50 U.S.C. app. §§ 501–591 (1988).[1] Speer was deployed for 31 days beginning July 8, 1992, and argued that his ability to defend the child support motion was materially affected by reason of his military service. The record provides no other information regarding Speer's prior military history, if any.

In an order dated September 8, 1992, the district court held that the declaration of parentage signed by Speer created only a presumption of parentage. See Minn.Stat. §§ 257.34, subd. 1, 257.55, subd. 1(c) (1990) (provisions regarding a presumption of paternity arising from a declaration of parentage). The court concluded that, absent adjudication of paternity, appellants could not proceed against Speer for guideline child support or AFDC reimbursement. Based upon its denial of appellants' motions, the district court was not required to address the applicability of the Soldiers' and Sailors' Civil Relief Act, and did not rule on that issue.

## ISSUES

1. Where there has been no formal adjudication of paternity, may the court order guideline child support from a man presumed the father of a child under Minn. Stat. § 257.55, subd. 1(e) (1990), where the presumption arises from a signed declaration of parentage?

2. Is a presumed father under the Parentage Act a "parent" under Minn.Stat. § 256.87, subd. 1 (1990) such that the court may order AFDC reimbursement?

## ANALYSIS

### I.

The Parentage Act, Minn.Stat. §§ 257.51–.74 (1990), governs the establishment of the parent and child relationship between a child and its natural father. *Morey v. Peppin*, 375 N.W.2d 19, 22 (Minn. 1985). The guiding principle is that the best interests of the child are paramount. *Id.* at 25. Interpretation of the Parentage Act is a question of law which this court can review without deference to the conclusions reached by the trial court. *See Rooney v. Rooney*, 478 N.W.2d 545, 547 (Minn. App.1991) (construction of income withholding provisions of chapter 518 is a question of law "fully reviewable by an appellate court"). We must interpret the Parentage Act liberally to achieve its "remedial and humanitarian purposes." *Weber v. Anderson*, 269 N.W.2d 892, 895 (Minn. 1978), *quoted in Larson v. Schmidt*, 400 N.W.2d 131, 134 (Minn.App.1987).

The district court concluded that a declaration stating it has the same effect as an adjudication of parentage exceeds the statutory scope of the Parentage Act. Minn. Stat. § 257.34 (1990) provides the statutory guidance governing declarations of parentage. A mother and a father in a writing signed by them both before a notary public may "declare and acknowledge under oath that they are the biological parents of the child." Minn.Stat. § 257.34, subd. 1 (1990). Execution of the declaration "create[s] a presumption that the signatory is the biological father of the child for the purposes of sections 257.51 to 257.74." Minn.Stat. § 257.34, subd. 1(c).

Presumptions of paternity are codified in Minn.Stat. § 257.55, subd. 1 (1990). The

---

1. 50 U.S.C. app. § 521 (1988) provides:
   At any stage thereof any action or proceeding in any court in which a person in military service is involved * * * during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall * * * be stayed as provided in this Act * * *, unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service.

presumptions are legislative provisions to aid in the recognition of the father and child relationship. *In re State, County of Douglas ex rel. Ward v. Carlson,* 409 N.W.2d 490, 491 (Minn.1987). The statute provides:

A man is presumed to be the biological father of a child if:

(a) [h]e and the child's biological mother are or have been married to each other and the child is born during the marriage, or within 280 days after the marriage is terminated;

\* \* \* \* \* \*

(e) [h]e and the child's biological mother acknowledge his paternity in a writing signed by both of them under section 257.34 and filed with the state registrar of vital statistics. .

Minn.Stat. § 257.55, subd. 1 (1990).

■ The record unequivocally establishes that Wilson and Speer signed the declaration of parentage. Speer has offered no evidence to contradict appellants' statement at oral argument that the declaration was filed with the registrar of vital statistics as statutorily required. We therefore conclude the declaration of parentage complied with Minn.Stat. § 257.34, subd. 1, giving rise to a presumption of paternity. Minn.Stat. § 257.55, subd. 1(e).

■ We must next address whether the court can set guideline child support and order reimbursement where Speer is merely the presumed father of Wilson's child but not the formally "adjudicated" father. In other words, must the child, mother, or county be compelled to bring an action to adjudicate paternity before the court may order a presumed father pay guideline child

support and reimburse AFDC? We believe the answer to this question is "no."

The supreme court's holding in *Carlson* supports our conclusion that a presumptive father is required to pay child support.[2] In that case, the court upheld the constitutionality of Minn.Stat. § 257.57, subd. 1(b), which imposes a three year statute of limitations after a child's birth to declare the nonexistence of a father and child relationship notwithstanding its presumption. *Carlson,* 409 N.W.2d at 493. In so holding, the court stated a class of children is not disadvantaged because "[a]ny action for support \* \* \* asserted \* \* \* by the state or county agency which has furnished AFDC lies against the *presumed father.*" *Id.* at 492–93 (emphasis added).

Furthermore, the presumption of Speer's paternity under Minn.Stat. § 257.55, subd. 1(e) is not distinguishable from a man presumed the father of a child born during the marriage under Minn.Stat. § 257.55, subd. 1(a). If a husband or a wife commences a dissolution action, the court may order temporary child support pending the final disposition of the proceedings. Minn.Stat. § 518.131, subd. 1(c) (1990). Likewise, the county may seek reimbursement of AFDC benefits under Minn.Stat. § 256.87, subd. 1 where a husband and wife have separated but are not divorced. *See County of Pine v. Petersen,* 453 N.W.2d 718, 720 (Minn. App.1990) (county entitled to a judgment of past assistance which a parent, separated but not divorced, has the ability to pay), *pet. for rev. denied* (Minn. May 30, 1990).

■ We hold that a presumptive father has a duty to provide child support under the guidelines established in Minn.Stat.

2. The Parentage Act contains various provisions related to child support, although no specific provision addresses a presumptive father's child support obligation. The Parentage Act provides that "upon motion the court shall order the alleged father to pay temporary child support determined according to chapter 518" into escrow pending the results of a paternity proceeding where blood tests have been ordered and the results indicate the probability of paternity of the alleged father is 92 percent or greater. Minn.Stat. § 257.62, subd. 5(a) (1990). The supreme court has upheld the constitutionality of

the statute. *Machecek v. Voss,* 361 N.W.2d 861, 865 (Minn.1985). The parentage act also provides that the judgment or order determining the existence or nonexistence of a parent and child relationship shall contain a provision regarding the duty of support. Minn.Stat. § 257.66, subd. 3 (1990); *Morey v. Peppin,* 375 N.W.2d 19, 22 (Minn.1985). Lastly, a written promise to provide support for a child is enforceable. Minn.Stat. § 257.72, subd. 1 (1990). The declaration involved here does not contain such a promise.

§ 518.551, subd. 5.[3]  Accordingly, we must remand to the district court to set child support.  On remand, however, the district court must first determine whether action on appellants' motions should be stayed under the Soliders' and Sailors' Civil Relief Act, 50 U.S.C. App. § 521.  *See Jackson v. Jackson*, 403 N.W.2d 248, 251 (Minn.App. 1987) (court has discretion to stay proceedings under section 521).  In *Jackson* this court concluded that the trial court did not abuse its discretion in holding that a military serviceman was not entitled to stay child support proceedings while overseas because the obligor's presence was unnecessary and evidence could fairly and more expeditiously be presented by affidavits and documentary evidence.  *Id.*  However, we are unable to conclude in this case, as a matter of law, that Speer's "absence did not materially affect his ability to conduct his defense" under section 521.  *Id.*  Thus, the district court, on remand, must apply the Soldiers' and Sailors' Civil Relief Act to the facts as the district court determines them to be.  *See* 50 U.S.C. App. § 521.

While our decision on the merits permits appellants to establish current child support, we emphasize that the child, Wilson, or Olmsted County may bring a formal paternity adjudication action at any time. *See* Minn.Stat. § 257.57, subd. 2(1) (1990). An action formally adjudicating Speer the father of the minor child may result in legal benefits for the child beyond those immediately available through child support paid as a result of appellants' motions. *See* Minn.Stat. § 257.52 (1990) (establishing the parent and child relationship confers a legal relationship between the two and "confers or imposes rights, privileges, duties, and obligations").  Therefore, this opinion must not be construed as encouraging counties that furnish assistance for the benefit of the child to invoke an economical short-cut and establish and collect child

**3.**  A presumed father ordered to pay child support may challenge paternity if an action to declare the nonexistence of a parent and child relationship is available to him under Minn. Stat. § 257.57 (1990).  On the factual record before us, we are unable to determine whether respondent has such an action or is conclusively presumed the father of the child.  A man presumed the biological father of the child under Minn.Stat. § 257.55, subd. 1 (1990) may rebut the presumption in an appropriate action by clear and convincing evidence.  Minn.Stat. § 257.55, subd. 2 (1990).  A man presumed to be the father of a child may bring an action

> for the purpose of declaring the *nonexistence* of the father and child relationship presumed under section 257.55, subdivision 1, clause (e) *only if the action is brought within three years after the date of the execution of the declaration.*

Minn.Stat. § 257.57, subd. 2(2) (1990) (emphasis added).  Likewise, a man presumed by marriage to be the father of a child has three years from the child's birth to commence an action to declare the nonexistence of the parent and child relationship.  Minn.Stat. § 257.57, subd. 1(b) (1990).  After expiration of the statute of limitations, the presumption becomes conclusive.  *See Pierce v. Pierce*, 374 N.W.2d 450, 453 (Minn.App. 1985) (legislative intent of three year statute of limitations applying to a man presumed by marriage to be the father "is to make the presumption of legitimacy conclusive once a child reaches three years of age"), *pet. for rev. denied* (Minn. Nov. 5, 1985).

The Soldiers' and Sailors' Civil Relief Act of 1940, however, tolls the period in which respondent could assert the nonexistence of the parent and child relationship during the time he was on active duty.  The Act provides:

> The period of military service shall not be included in computing any period * * * for the bringing of any action or proceeding in any court * * * whether such cause of action or the right or privilege to institute such action or proceeding shall have accrued prior to or during the periods of such service.

50 U.S.C. App. § 525 (1988).  On March 31, 1993, the Court in *Conroy v. Aniskoff*, —— U.S. ——, ——, 113 S.Ct. 1562, 1564, 123 L.Ed.2d 229 (1993), stated that section 525 is "unambiguous, unequivocal, and unlimited."  The Court held that a member of the armed services is not required to show that his military service prejudiced his ability to bring an action in order for section 525 to toll the limitations period.  *Id.*  The court construed the provision to protect "all military personnel on active duty."  *Id.*  The critical factor is military service, and once shown, the period of limitations is automatically tolled for the duration of the military service.  *Ricard v. Birch*, 529 F.2d 214, 217 (4th Cir.1975); *Bickford v. United States*, 228 Ct.Cl. 321, 656 F.2d 636, 639 (1981).

Respondent was an active member of the armed forces when appellants commenced this action.  However, the record does not indicate if he was in the military at the time he executed the declaration of parentage in 1988 or at any time within the three years thereafter.  We, therefore, are unable to conclude whether the presumption that respondent is the father of the child has become conclusive.

support as a permanent alternative to establishing paternity through adjudication.

We conclude that the district court erred in denying appellants' motion to establish child support. We remand to enable the court to, first, decide whether appellants' motions should be stayed under the Soldiers' and Sailors' Civil Relief Act. If the court, in its discretion, determines that such stay is not required, it shall establish a current child support order pursuant to Minn.Stat. § 518.551, subd. 5.

## II.

■ Wilson and Olmsted County also argue the district court erred in refusing to order AFDC reimbursement from Speer under Minn.Stat. § 256.87, subd. 1 (1990). Under that statute, a "parent" of a child is liable for the amount of assistance furnished for the benefit of the child under sections 256.72 to 256.87 which the parent has the ability to pay. Appellants contend Speer is the "parent" for the purpose of the statute. We agree.

Section 256.87 states that a parent has an obligation to reimburse assistance furnished by the county. Under Minn.Stat. § 257.55, certain individuals are presumed to be the parents of a child. A presumed parent is a parent until the presumption is rebutted. Here, Speer swore under oath in the declaration of parentage that he is the father of the child, giving rise to the presumption. Appellants have a right to seek reimbursement from Speer pursuant to Minn.Stat. § 256.87, subd. 1 (1990). Upon remand, if the court in its discretion determines that a stay pursuant to the Soldiers' and Sailors' Civil Relief Act is not required, it may order appropriate reimbursement.

## DECISION

The court erred in concluding it could not establish guideline child support or order AFDC reimbursement based upon the presumed paternity established by the declaration of parentage respondent signed in compliance with Minn.Stat. § 257.34, subd. 1. Upon remand, subject to a determination of the applicability of the Soldiers' and Sailors' Civil Relief Act, the court shall determine appropriate child support and reimbursement levels.

**Reversed and remanded.**

RANDALL, Judge, dissenting.

I respectfully dissent. I agree with the majority's decision that the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. app. §§ 501–591 (1988) has to be reconsidered by the trial court if they intend to find that a presumed but not adjudicated father can be ordered to pay child support, but I respectfully dissent as I find that issue is moot. In my opinion, the trial court acted properly in denying appellant's motion to order respondent to pay child support, and a determination either way regarding the Soldiers' and Sailors' Relief Act would not affect my analysis.

The trial court denied appellant's motion to order respondent to pay child support because respondent has never been legally adjudicated the father of the child. I agree with the trial court.

The trial court held the declaration of parentage signed by respondent and appellant Wilson created only a presumption of parentage. *See* Minn.Stat. § 257.34, subd. 1(c) (1990) (declaration creates a presumption that the signatory is the biological father of the child for the purposes of sections 257.51 to 257.74). The trial court concluded the declaration exceeded the statutory scope of the Parentage Act because the declaration included the phrase that "this declaration has the same effect as Adjudication of Paternity." I agree with the trial court that this is nothing more than a made-up phrase, and that a lay person calling a signed agreement the equivalent of a court-ordered judgment does not make it so.

I equate the declaration of paternity with a stipulation in a dissolution action which has been agreed upon and signed by both parties. It is certainly a legal agreement which can be looked at to help establish the parties' rights and obligations. *But*, a stipulation for property settlement, maintenance, child support, et cetera, *never* becomes binding in a dissolution action unless

and until the trial judge accepts it and incorporates it into a judgment and decree which is signed by the judge. The parties can suggest what is fair in a settlement, but only the trial court has the legal authority to declare it to be so. *Karon v. Karon,* 435 N.W.2d 501, 507 (Minn.1989); *Swanson v. Swanson,* 372 N.W.2d 420, 423 (Minn.App.1985).

Here, two consenting adults signed a written document in which they recited, basically, that to their honest belief they were the parents of a minor, and they jointly agreed to take care of the child. There is nothing in the record to indicate they were incorrect in their beliefs, but that document was never taken to court and made part of a legal adjudication of paternity. Again, I find that lay persons certainly can "suggest" who might be the father, but it takes legal adjudication for the important ramifications of parent/child relationship to be put into place. The importance of family law calls for the rule of law.

The majority concedes as much and appears concerned that their opinion might be construed as a shortcut to the normal way the judicial process requires paternity actions to be commenced and child support to be collected. I agree. The trial court properly found this was a shortcut. There is no prejudice to the county or the mother to do this the right way. Appellants conceded at oral argument they can obtain a legal adjudication of parentage. That would simply involve making sure that respondent's rights, if any, under the Soldiers' and Sailors' Civil Relief Act of 1940 are taken into account. Appellant Olmsted County argues that made it burdensome to formally adjudicate respondent the father, and thus legal adjudication was never completed. That is no excuse. Any legal rights afforded respondent by the Soldiers' and Sailors' Civil Relief Act of 1940 belong to him and cannot be taken away. If appellants have to do more paper work and consume time to do a court-ordered adjudication properly, so be it.

I agree that when appellants get around to completing the legal adjudication of re-spondent as father, they should win. Respondent has never fought paternity. This case would not be before this court except that Olmsted County and respondent have a disagreement over how much child support respondent should pay. When appellant county pushed for the limit, respondent got his back up and, in effect, said, "since I am not legally obligated to pay any, I'm not going to voluntarily agree to the high figure you want which I feel I cannot afford." I find the law favors respondent's position. What statutory authority we have supports a conclusion that a presumptive but unadjudicated father does not have a legal obligation to pay support. For instance, where blood tests have been ordered and the results indicate the probability of paternity of the alleged father is 92 percent or greater, "upon motion the court shall order the alleged father to pay *temporary* child support determined according to chapter 518." Minn.Stat. § 257.62, subd. 5(a) (1990) (emphasis added). *The support ordered is paid in escrow* to the court (if it was true child support, it would immediately go to the custodian for the child's use with no restrictions) pending the results of the paternity proceedings. *Id.*

Also, the Parentage Act provides that the *judgment* or order determining the existence or nonexistence of a parent and child relationship shall contain a provision regarding the duty of support. Minn.Stat. § 257.66, subd. 3 (1990); *see also Morey v. Peppin,* 375 N.W.2d 19, 22 (Minn.1985). Treatises seem to indicate that the *adjudicated father* in a paternity proceeding must provide support to his minor child. *See* 1 *Minnesota Family Law Practice Manual,* § 20.11(A) (Cathy E. Gorlin, ed., 2d ed. 1993); 14 Martin L. Swaden & Linda A. Olup, *Minnesota Practice* § 19.21 at 498 (1992).

Appellant county argues this judicial shortcut is in the best interests of the child. I suggest the county's real interest, although legal, is mundane rather than noble. Olmsted County has paid out AFDC benefits to the child's mother and wants reimbursement. If the child's best interests are truly the test, I suggest complet-

ing the legal adjudication of respondent as the father has to be the best available option. Olmsted County has the means and the facts to complete legal adjudication of parentage. The passage of the three years will further simplify their task. The record gives no indication it will end up as anybody else but respondent.

The far reaching ramifications of a legal parent/child relationship, including but not limited to social security benefits, military benefits, child support, possible inclusion in group medical coverage, inheritance rights, et cetera, are better served by completing legal adjudication rather than resting on this shortcut which Olmsted County argues has been local practice for some time. I can only note that the importance which Olmsted County places on respondent's written acknowledgement of parentage cannot safely be assumed for the rest of the child's life to have that same importance in all 50 states in this country, in the federal system, and in other countries. A simple example is holographic wills.[1] Many jurisdictions recognize their validity and consider them true testamentary documents capable of passing on property. Minnesota does not. Minnesota chooses to state that despite the fact holographics can be authenticated as a true desire of a deceased's intentions, and despite the fact other states recognize them, we do not want to. What would prevent other jurisdictions from viewing Minnesota's paternity presumption, based on a signed declaration but unaccompanied by further court action, in the same light?

To preserve the importance of a rule of law and to permanently put to rest the legal issue of respondent's relationship to the child, Olmsted County should complete the process of legal adjudication of paternity. I would affirm the trial court.

---

1. Holographic wills are handwritten by the testator and are not witnessed. The Uniform Probate Code recognizes holographic wills. Uniform Prob.Code § 2–503. Approximately half of the states recognize holographic wills. William M. McGovern, Jr., et al., *Wills, Trusts & Estates* § 4.5 at 173 (1988). Minnesota does not recognize holographic wills. *See* Minn.Stat. § 524.2–502 (1992).