529 N.W.2d 340 (1995)
Ann Christine DeGRANDE and Ramsey County, petitioners, Respondents,
v.
Eric Rodney DEMBY, Jr., Appellant.
No. C0-94-1224.
Court of Appeals of Minnesota.
March 7, 1995.
Review Granted May 16, 1995.
*341 Susan Gaertner, Ramsey County Atty., Kathryn A. Santelmann, Asst. County Atty., St. Paul, for respondents.
James T. Hankes, Ramsey County Public Defender, Ellen Seesel, Asst. Public Defender, Joe Y. Yang, Certified Student Atty., St. Paul, for appellant.
Considered and decided by NORTON, P.J., SHORT and PETERSON, JJ.

OPINION
SHORT, Judge.
Eric Demby, Jr. appeals from an order denying his motion to vacate an adjudication of paternity.

FACTS
On August 25, 1989, Ann Christine DeGrande gave birth to a child out of wedlock. That same day, DeGrande and Demby signed a declaration of parentage affirming Demby as the father of their new baby. The declaration was filed with the registrar of vital statistics on September 22, 1989.
In February 1990, Demby was served with a complaint to determine paternity and a motion to require all parties to have blood tests, to produce certain financial information, and to attend a pretrial hearing. At the February 12 hearing, DeGrande, who was receiving public assistance, was represented by an attorney from the county attorney's office, and Demby represented himself. Demby admitted he was the father of the five-month-old child, and waived his right to counsel and to have blood tests conducted. DeGrande and Demby entered into a stipulation determining paternity, custody, and visitation. The trial court approved and adopted the stipulation in a judgment dated February 14, 1990.
In April 1990, Demby was ordered to pay $81.92 per month in child support and was granted $150 for pre-adjudication expenses. In May 1992, Demby's child support obligation was increased to $86.92 per month to reflect a cost-of-living adjustment. In August 1992, the trial court reviewed Demby's child support obligation and increased the payment to $156.68 per month because Demby's income had increased.
On January 15, 1993, a hearing was held to review Demby's financial status in connection with his child support obligation. At that hearing, Demby's counsel orally requested blood tests because
the mother [DeGrande] keeps telling Mr. Demby that he's not the father of the child, and although there is some doubt as to this, Mr. Demby has accepted the child as his and loves it and cares for it very much. The mother keeps using this as sort of a wedge between him and the child and it's causing a lot of problems and he's requesting of the Court that, for the sake of establishing once and for all the fact that he is the father of the child, he's requesting the Court that blood tests be administered to him and the mother and the child.
Demby did not argue that his request for blood tests related back to the 1990 paternity action, and the county had no objection to blood tests if Demby assumed financial responsibility for all costs. The trial court took the testing issue under advisement and established interim child support at $100 per month because Demby voluntarily quit his job. By order dated February 25, 1993, the trial court granted Demby's request for blood tests.
On April 30, 1993, a blood testing laboratory excluded Demby as the biological father of the child. In August 1993, Demby moved for vacation of the paternity adjudication and refund of all child support paid. A referee granted Demby's Rule 60.02(f) motion, and DeGrande and Ramsey County appealed. On May 6, 1994, a trial court concluded the three-year statute of limitations contained in the Parentage Act barred Demby's action to vacate the adjudication of paternity. The trial court, thus, reversed the referee's determination, denied Demby's motion, and reinstated the February 1990 paternity judgment.

ISSUE
Does Minn.R.Civ.P. 60.02(f) permit an adjudicated father to override the three-year *342 statute of limitations in Minn.Stat. § 257.57, subd. 2(2) (Supp.1993)?

ANALYSIS
A man is presumed to be the biological father of a child if he and the child's biological mother acknowledge his paternity in a fully executed and filed declaration of parentage. Minn.Stat. § 257.55, subd. 1(e) (Supp.1993). That statutory presumption can be rebutted "in an appropriate action only by clear and convincing evidence." Minn.Stat. § 257.55, subd. 2 (1992). It is undisputed Demby and the child's biological mother fully executed and properly filed a declaration of parentage in 1989. Demby argues statistical evidence based on blood test results constitutes "clear and convincing evidence" that he is not the biological father. The issue before us is whether the trial court erred by concluding Demby's claim, made four years after execution of the declaration, is barred by the three-year limitations period of Minn.Stat. § 257.57, subd. 2(2).
Minnesota's Parentage Act is substantially similar to the Uniform Parentage Act. Compare Unif. Parentage Act §§ 1-30, 9B U.L.A. 295-345 (1987) with Minnesota Parentage Act, Minn.Stat. §§ 257.51-.74 (1992 & Supp.1993). Unlike the Uniform Parentage Act, however, Minnesota's statutory scheme imposes a limitation on actions to challenge paternity based on a declaration. Minn.Stat. § 257.57, subd. 2(2) (Supp.1993) permits an action
for the purpose of declaring the nonexistence of the father and child relationship presumed under section 257.55, subdivision 1, paragraph (e) or (g) [declaration of parentage], only if the action is brought within three years after the date of the execution of the declaration * * *.
By the statute's explicit terms and under case law interpreting that language, a presumption of paternity based on a declaration becomes conclusive if not challenged within three years of the declaration. Minn.Stat. § 257.57, subd. 2(2); In re Welfare of C.M.G., 516 N.W.2d 555, 561 (Minn.App.1994); Wilson v. Speer, 499 N.W.2d 850, 854 n. 3 (Minn. App.1993), pet. for rev. granted (Minn. July 19, 1993), appeal withdrawn (Aug. 16, 1993); see Pierce v. Pierce, 374 N.W.2d 450, 452 (Minn.App.1985) (three-year statute of limitations is absolute in that it bars action even if the presumed father obtains knowledge of illegitimacy after the running of the statute), pet. for rev. denied (Minn. Nov. 4, 1985).
Demby argues the adjudication of paternity should be vacated under Minn. R.Civ.P. 60.02(f), notwithstanding the three-year statute of limitations. Rule 60.02(f) provides:
On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment (other than a divorce decree), order, or proceeding and may order a new trial or grant such other relief as may be just for * * * [a]ny other reason justifying relief from the operation of the judgment.
The Rules of Civil Procedure flow from the Supreme Court's inherent judicial authority to regulate pleadings, practice, and forms in civil actions. Minn.Stat. § 480.051 (1992). However, court rules cannot abridge, enlarge, or modify the substantive rights of a litigant. Id.; State v. Johnson, 514 N.W.2d 551, 553-54 (Minn.1994); see Weiler v. Lutz, 501 N.W.2d 667, 670 (Minn.App.1993) (rules of civil procedure do not modify or enlarge substantive rights), aff'd, Valentine v. Lutz, 512 N.W.2d 868 (Minn.1994). While statutes of limitations may be viewed as both procedural and substantive, the substantive aspects of the statute of limitations predominate in this case because the limitations period has expired. See Johnson, 514 N.W.2d at 555 (statutes of limitations are procedural in that they regulate when a party may file a lawsuit and are substantive in that they are outcome determinative); Stern v. Dill, 442 N.W.2d 322, 324 (Minn.1989) (substantive law creates, defines, and regulates rights). Thus, a procedural rule cannot override the substantive aspects of a statute of limitations.
We are unable to find any authority standing for the proposition that a legislatively-imposed statute of limitations may be modified by a judicial rule of procedure. Cf. Wessels v. Swanson, 289 N.W.2d 469, 470 (Minn.1979) (a judicially-imposed bar like a default judgment may be lifted by the judiciary *343 pursuant to Minn.R.Civ.P. 60); State ex rel. Ondracek v. Blohm, 363 N.W.2d 113, 115 (Minn.App.1985) (paternity issue decided in dissolution action precludes defense of nonpaternity in subsequent URESA action unless father meets requirements of Rule 60.02(a), (b), or (c), or he brings motion no later than three years after child's birth). In addition, Demby did not argue, either below or to this court, that the statute of limitations was tolled, had not run, or that his blood tests request in 1993 related back to the 1990 paternity complaint. Permitting Demby to reopen the four-year-old paternity adjudication under Minn.R.Civ.P. 60.02(f) would conflict with Minn.Stat. § 257.57. See In re Petition of Brainerd Nat'l Bank, 383 N.W.2d 284, 286 (Minn.1986) (disallowing Rule 60.02(a) motion because it would frustrate a central purpose of the Torrens Title Act, conclusiveness and indefeasibility of title). The essential purpose of the Parentage Act, to ascertain paternity and enforce support obligations, would be frustrated by application of Rule 60 to these facts.
Furthermore, Rule 60.02(f) motions must be brought "within a reasonable time." The specific three-year limitation of Minn.Stat. § 257.57 renders unreasonable a Rule 60.02(f) motion brought four years after acknowledgement of paternity. The 1989 declaration of parentage that Demby signed clearly stated actions to contest paternity must be brought within three years. The Minnesota Parentage Act "preempts all other means by which an action to declare nonpaternity may be brought." Clay v. Clay, 397 N.W.2d 571, 579 (Minn.App.1986), pet. for rev. denied (Minn. Feb. 17, 1987), appeal dismissed, 484 U.S. 804, 108 S.Ct. 49-50, 98 L.Ed.2d 14 (1987). The clear dictates of the legislature cannot be set aside by a Rule 60 motion.
The public policy of the state is to encourage use of blood tests when paternity is in issue. Berrisford v. Berrisford, 322 N.W.2d 742, 745 (Minn.1982). Demby had the opportunity to offer blood test evidence within three years of executing the declaration of parentage. Demby also specifically waived his right to have the county conduct blood tests when support payments were established in February 1990. See Clay, 397 N.W.2d at 579 (discussing finality of judgments).
Demby argues Clay and Pierce are not controlling because those cases involved the issue of paternity within a family unit, while the child in this case was born out of wedlock. Although the Clay and Pierce cases involved the issue of legitimacy, illegitimate children are entitled to legal equality with legitimate children. See Weber v. Aetna Casualty & Sur. Co., 406 U.S. 164, 177, 92 S.Ct. 1400, 1407, 31 L.Ed.2d 768 (1972) (Equal Protection Clause enables courts to strike down discriminatory laws relating to status of birth); Harry D. Krause, The Uniform Parentage Act, 8 Fam.L.Q. 1, 7 (1974) (discussing constitutional rights of illegitimate children); Robert L. Stenger, Expanding Constitutional Rights of Illegitimate Children, 1968-1980, 19 J.Fam.L. 407, 411-14 (1980-81) (same). Furthermore, the Parentage Act applies the same three-year statute of limitations to actions to declare nonpaternity of children born both in and out of wedlock. Minn.Stat. § 257.57, subds. 1(b), 2(2) (Supp.1993).
The legislature has chosen to limit challenges to paternity. The statute operates to establish support obligations in a timely manner where paternity is not denied, and promotes important public policy concerns regarding the interests of the child and of the state. It is not our place to create an exception for actions based on blood test evidence arising after the three-year limitations period. The legislature may establish an exception if it chooses. See, e.g., 1989 Minn. Laws ch. 282, Art. 2, § 161, subd. 1(f) (allowing blood tests to raise presumption) (amending section 257.55). In addition, the biological father may be sought out, named by the mother, or come forward should there be a desire to obtain information about the child's genetic makeup for medical reasons.

DECISION
Even in the face of scientific evidence excluding Demby's biological paternity, the three-year statute of limitations contained in the Minnesota Parentage Act is an absolute *344 bar to an action to declare the father-child relationship nonexistent.
Affirmed.
NORTON, Judge, dissenting.
I respectfully dissent. I would reverse the trial court and remand Demby's motion for a full hearing on the merits. Eric Demby, Jr. is not the father of DeGrande's child. Genetic tests prove that conclusively. Despite the fact that the trial court ordered these tests, it refused to reconsider an adjudication of Demby's paternity that was based solely on his own misinformed admission of paternity.
The guiding principle of the Parentage Act is to serve the best interests of the child. Wilson v. Speer, 499 N.W.2d 850, 852 (Minn. App.1993), pet. for rev. granted (Minn. July 19, 1993), appeal withdrawn (Aug. 16, 1993); see In re Welfare of C.M.G., 516 N.W.2d 555, 560 (Minn.App.1994) (child's best interest used to resolve conflicting paternity presumptions); Kelly v. Cataldo, 488 N.W.2d 822, 826 (Minn.App.1992) (same), pet. for rev. denied (Minn. Sept. 15, 1992); see also Deborah A. Ellingboe, Note, Sex, Lies and Genetic Tests: Challenging the Marital Presumption of Paternity Under the Minnesota Parentage Act, 78 Minn.L.Rev. 1013, 1044 (1994) (considering child's best interests "allows courts flexibility in dealing with modern, nontraditional families, while protecting all interested parties").
In deciding this case, neither the trial court nor this court considered the child's best interests. No court has ever heard testimony on whether this child is best served by adjudicating Demby as the father, or by finding the real father. There was no testimony concerning the nature of the child's relationship, if any, with Demby, or the child's relationship, if any, with the real father. Knowing her true father may be very important to the child, not just emotionally, but medically as well. The child's genetic make-up may put her offspring at risk for Tay-Sachs disease, sickle cell anemia, hemophilia, or a number of other genetic diseases. Accurate information about her true father may be essential before deciding to reproduce. Also, should the child ever need an organ transplant, accurate information about her biological father could save her life.
Although the majority's decision today does not necessarily serve the child's best interest, it does serve Ramsey County's best interests. Because DeGrande receives public assistance, Demby's child support payments reimburse the county. The county seeks to affirm the adjudication of Demby as the child's father so that it can continue to collect child support payments from a man the county knows is not the child's father. "[The County's] position is legal, but hardly a base from which to construct a marble monument to equity." Clay v. Clay, 397 N.W.2d 571, 582 (Minn.App.1986) (Randall, J., dissenting), pet. for rev. denied (Minn. Feb. 17, 1987), appeal dismissed 484 U.S. 804, 108 S.Ct. 49, 98 L.Ed.2d 14 (1987); see also Warhol v. Warhol, 464 N.W.2d 574, 577 (Minn.App. 1990) ("For a court to artificially continue the relationship just for the economics of a monthly support check doesn't serve any emotional need of [the child and father]"), pet. for rev. denied (Minn. Mar. 15, 1991).
The sole grounds for concluding that Demby is the child's father is a declaration of parentage, which Demby signed the day the child was born after the child's mother falsely told Demby he was the father. Like any responsible man, Demby assumed the responsibilities of a father, regularly paying child support. Demby began to doubt his paternity only after the mother told him he was not the real father in order to disrupt his relationship with the child. Demby asked the court to order blood tests to prove his paternity, despite the mother's comments. Demby expected the tests would show he was in fact the father. Instead, they showed the opposite. On the basis of the test results, he asked the court to reconsider its order adjudicating him the father.
A putative father may be under considerable personal pressure to set aside doubts about his paternity and waive his right to counsel and blood tests for the sake of his relationship with the mother and the child. The legal and financial consequences of signing a declaration of parentage are great, but the formal requirements of the declaration *345 are not. A putative father need only sign, notarize, and file the declaration. Minn.Stat. §§ 257.55, subd. 1(e) (1992). In contrast, the formal requirements for legally adopting a child are many and complicated. See Minn. Stat. § 259.21-.49 (1992). As the majority's decision in this case demonstrates, however, the two procedures have the same effect when the putative father is not actually the father.
Demby brought his motion under Minn. R.Civ.P. 60.02(f), which allows the court to reconsider a judgment for "[a]ny other reason justifying relief from the operation of the judgment." The majority holds that the legislative statute of limitations in the Parentage Act bars a rule 60 motion. I disagree.
Minn.Stat. § 257.57, subd. 2(2) (1992) provides that an action to declare the nonexistence of the father and child relationship presumed under a declaration of parentage may be brought within three years after execution of the declaration. But Minn.Stat. § 257.57, subd. 2(2) applies when a party "bring[s] an action * * * for the purpose of declaring the nonexistence of the father-child relationship," not when a presumed father raises paternity as a defense in an action to establish paternity.[1]Id. (emphasis added); State of Ga. ex rel. Brooks v. Braswell, 474 N.W.2d 346, 350 (Minn.1991) ("right to deny paternity defensively, whether asserted to rebut a presumption of paternity or simply to defend against an allegation of paternity where there is no presumed father, is not subject to time limitations and may be exercised by the defendant in any action in which it is alleged that he is the child's father"); Reynolds v. Reynolds, 458 N.W.2d 103, 105 (Minn.1990) (statute of limitations in Parentage Act "does not bar a party from raising a pure defense"); State, Douglas County ex rel. Ward. v. Carlson, 409 N.W.2d 490, 493 (Minn.1987) (stating that "[e]ven if the right to bring an action for a declaration of the nonexistence of the father and child relationship presumed under section 257.55 * * * has been foreclosed by the lapse of time, nothing in the Parentage Act * * * precludes a presumed father from denying paternity").
We must look at this issue in its proper context. Demby has not brought a new action under section 257.57 to establish nonpaternity. He has moved to reopen the adjudication of paternity under rule 60 in order to raise his pure defense of nonpaternity. Consequently, the three-year statute of limitations does not apply to this case. Reynolds, 458 N.W.2d at 105; cf. Warhol, 464 N.W.2d at 577 (husband's motion to amend dissolution petition to challenge paternity related back to date of original petition).
Since Demby filed his rule 60 motion almost immediately after he learned he was not the child's father, I would hold that he filed the motion within a reasonable time. See Minn.R.Civ.P. 60.02 (motion shall be brought within "reasonable time"). To prevail on a rule 60.02(f) motion, Demby needed to establish four factors: (1) he had a reasonable claim on the merits; (2) he had a reasonable excuse for his failure or neglect to proceed; (3) he acted with due diligence after the judgment; and (4) that no substantial prejudice would result to the other party. Chapman v. Special Sch. Dist. No. 1, 454 N.W.2d 921, 923 (Minn.1990) (citing Hinz v. Northland Milk & Ice Cream Co., 237 Minn. 28, 30, 53 N.W.2d 454, 456 (1952)).
Demby is entitled to relief under rule 60.02(f). He has a reasonable claim on the merits; he claims he is not the child's father, and genetic tests conclusively support him. He has a reasonable excuse for his failure or neglect to proceed; the child's mother falsely told him he was the father. He had no reason to doubt his paternity until the mother told him otherwise. The record shows Demby complied with the judgment by paying his monthly child support obligation. After he learned he was not the child's father, he acted with due diligence to reopen the judgment; there is no indication that Demby knew, or even suspected, he was not the child's father until the mother told him. No *346 substantial prejudice will result to the other parties; DeGrande and the county are free to bring an action against the real father at any time. Minn.Stat. § 257.57, subd. 3.
In addition, Demby's blood test revealed conclusively that he is not this child's father. Minnesota courts encourage the use of blood tests when paternity is at issue because they are the most reliable kind of evidence available to determine paternity. Berrisford v. Berrisford, 322 N.W.2d 742, 745 (Minn. 1982); Wessels v. Swanson, 289 N.W.2d 469, 470 (Minn.1979). Blood tests "furnish a reason justifying relief to the operation of the judgment pursuant to [Minn.R.Civ.P. 60.02(f)]," even if the father has failed to meet the stricter time limits set forth in Minn.R.Civ.P. 60.02(a)-(c). Wessels, 289 N.W.2d at 470. This court has said that blood tests are a "reason justifying relief from the judgment without any time limitation on the bringing of a motion" under rule 60. State ex rel. Ondracek v. Blohm, 363 N.W.2d 113, 115 (Minn.App.1985) (emphasis added). Having established these factors, Demby was entitled to reopen the judgment of paternity.[2]
The majority of jurisdictions adopting the Uniform Parentage Act do not impose a strict statute of limitations on actions to challenge paternity where the presumption of paternity arises from a declaration of parentage.[3] Other jurisdictions are skeptical of declarations of parentage and provide relief from judgment under rule 60.02(f). See e.g. K.W. v. State ex rel. S.G., 581 So.2d 855, 857 (Ala.Civ.App.1991) (stating that adjudication of paternity entered upon mere admission of paternity in stipulated order establishes little more than the fact that the father engaged in sexual intercourse with the mother; holding that individual adjudicated father of children in proceeding four years prior could seek to reopen judgment under rule 60). Given this status of the law, I see no reason for Minnesota to stretch to apply the statute of limitations to a case which falls squarely under rule 60.
Finally, the majority concludes that "[t]he essential purpose of the Parentage Act, to ascertain paternity and enforce support obligations, would be frustrated by application of rule 60 to these facts." I respectfully disagree. The essential purpose of the Parentage Act is to serve the best interests of the child. Wilson, 499 N.W.2d at 852. Furthermore, the supreme court has recognized that the "ultimate goal of [a paternity action] is, of course, the identification of the child's natural father." Carlson, 409 N.W.2d at 493. Because the majority decision frustrates that purpose and goal, I dissent.
NOTES
[1] For the record, the parties argued the specific issue of whether the statute of limitations barred a rule 60 motion to reopen at the district court before the referee and the reviewing judge. This court need not defer to the district's court's conclusions of law on this issue. Frost-Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n, 358 N.W.2d 639, 642 (Minn.1984).
[2] This case is distinguished from our decision in Clay, 397 N.W.2d at 577-78, where we held that Robert Clay could not seek to reopen his dissolution decree under rule 60.02 to challenge paternity. The court may not entertain motions to reopen a dissolution decree under rule 60.02. Id. at 578. This bar does not apply here.
[3] Ala.Code § 26-17-6(b) (Supp.1994); Cal.Fam. Code §§ 7611, 7630 (West 1994) ("reasonable time"); Colo.Rev.Stat.Ann. § 19-4-107(2) (West Supp.1994); Del.Code Ann. tit. 13 § 805 (1993); Haw.Rev.Stat. § 584-6 (1985); Ill.Ann.Stat. ch. 750, para. 45/7 (Smith-Hurd Supp.1994); Kan. Stat.Ann. §§ 38-1114, 1115 (1993); Mo.Ann. Stat. §§ 210.822, .826 (Vernon Supp.1994); Mont. Code Ann. § 40-6-107(1) (1993); Nev. Rev.Stat. § 126.071(1) (1994); N.J.Rev.Stat.Ann. § 9:17-45 (West 1993); N.M.Stat.Ann. § 40-11-7 (Michie 1994); Ohio Rev.Code Ann. § 3111.04(a) (Anderson Supp.1994); R.I.Gen. Laws 15-8-1 to 27 (1988); Wash.Rev.Code Ann. § 26.26.060(1)(b) (West 1986) ("reasonable time"); Wyo. Stat. § 14-2-104(c) (1994) ("reasonable time"); but see Haw.Rev.Stat. § 584-6 (1985) (3 years, except that period of time alleged father is paying support is not computed); N.D.Cent.Code § 14-17-05, para. 2 (1991) (5 years).