IN RE APPLICATION OF JEANINE HANSEL ROBINSON, MOTHER AND NATURAL GUARDIAN OF HOLLY HANSEL AND OTHERS, FOR CHANGE OF THEIR NAMES. JEANINE HANSEL ROBINSON v. RICHARD D. HANSEL.

223 N. W: 2d 138.

November 1, 1974—No. 44724.

*Goff & Goff, Sydney W. Goff,* and *John Feldman,* for appellant. *Murnane, Murnane, Battis & Conlin* and *John R. Hoffman,* for respondent.

Heard before Sheran, C. J., and Rogosheske, Peterson, Mac-Laughlin, and Scott, JJ., and considered and decided by the court en banc.

PETERSON, JUSTICE.

This is a proceeding in which the petitioner seeks to change the surnames of four minor children in her custody. The petition was opposed by the children's natural father. From an order of the Ramsey County District Court granting the petition, the natural father appeals. We reverse.

Jeanine Hansel Robinson, petitioner, and Richard D. Hansel were divorced in 1969. Petitioner was awarded the custody of the four minor children of that marriage, namely, Holly Jean Hansel, now 17 years old; Kara Ann Hansel, 14; Heidi Marie Hansel, 10; and Brian Boyd Hansel, 6.

Petitioner remarried in 1970, and the four Hansel children have since been living with her and her new husband, Bruce Robinson. Robinson's natural children by a former marriage are living with his former wife. In October 1973 petitioner instituted an action, pursuant to Minn. St. 259.10 and 259.11, to change the surnames of each of the four minor children by adding the surname of petitioner's present husband. Thus, the surname "Hansel" would become the surname "Hansel Robinson."

The precise issue of whether a change in a child's name should be ordered over the objection of a natural parent is one of first impression in this court. There is no issue, however, that the welfare of the children must ultimately be the controlling consideration in any change of status. A change in surname, so that a child no longer bears his father's name, not only obviously is of inherent concern to the natural father, so that he should have standing to object, but is in a real sense a change in status having significant societal implications. Society has a strong interest in the preservation of the parental relationship. Even though a divorce decree may terminate a marriage, courts have traditionally tried to maintain and to encourage continuing parental relationships. The link between a father and child in circum-

stances such as these is uncertain at best, and a change of name could further weaken, if not sever, such a bond.

This consideration has been recognized in a number of jurisdictions.[1] In Massachusetts, for example, the Supreme Judicial Court refused, in the case of Mark v. Kahn, 333 Mass. 517, 521, 131 N. E. 2d 758, 762, 53 A. L. R. 2d 908, 913 (1956), to change the names of minor children, holding:

"* * * A change of name may not be in the child's best interest if the effect of such change is to contribute to the further estrangement of the child from a father who exhibits a desire to preserve the parental relationship."

In Ohio, the court held, in Kay v. Kay, 51 Ohio O. 434, 438, 112 N. E. 2d 562, 567 (1953):

"* * * Ordinarily a change of the name of a minor child of divorced parents should not be granted where it might contribute to the estrangement of the child from its father who has shown a desire to preserve the parental relationship, * * *."

Other courts have looked to the natural and appropriate desire of the father to have his children bear and perpetuate his name,[2] as well as to the desirability of the child knowing his own parentage.[3]

We are fully persuaded, for like reasons, that judicial discretion in ordering a change of a minor's surname against the objection of one parent should be exercised with great caution and only where the evidence is clear and compelling that the substantial welfare of the child necessitates such change.

The evidence supporting the petition for change of name is neither clear nor compelling. It is clear that the principal reason for the trial court's ordering a change of surname was that the male child, Brian, age 6, who was born after his natural parents

---

[1] See, generally, Annotation, 53 A. L. R. 2d 914.

[2] Clinton v. Morrow, 220 Ark. 377, 247 S. W. 2d 1015 (1952).

[3] Matter of Epstein, 121 Misc. 151, 200 N. Y. S. 897 (1923).

were separated, but several months before the divorce, "looks upon Bruce Robinson, the petitioner's husband, as his father, and uses the name Robinson as his own name." How it came to be that he does use the Robinson name is not stated in the record, but it seems unlikely that it was encouraged by his natural father. It is clear that his natural father had exercised a substantial amount of visitation rights granted him by the divorce decree, demonstrating his effort to maintain a familial relationship with his son and daughters.[4]

The trial court concluded that "[i]t would not be practical to change the name of Brian Hansel without changing the names of all of the children, and it would not be in the best interests of any of the children to change the name of one without changing the others." As to these other older children, there was some evidence that they had experienced "some difficulty in the way of harassment by schoolmates and friends, and difficulty has also been experienced in obtaining insurance coverage, and an application for scholarships to college." The court did not treat this as compelling a change of name. The nature of the evidence demonstrated the difficulties to be both minor and transitory. The children's participation in school and school activities had not been adversely affected. Whatever the nature of the "harassment" of the children by their peers, it would seem that it was in this case surely no more severe than faced by thousands of other similarly situated children in a day when broken homes have become commonplace.

The petition for change of surname stems not alone from the divorce but from a custody status. Awarding permanent custody is impermanent to the extent that death or subsequent divorce

---

[4] Petitioner contends that Richard Hansel, the father, had failed consistently to make support payments as ordered in the divorce decree. It is clear, however, that the trial court did not consider this as a reason for its order. Whatever the reason for these defaults, moreover, they are not of such character as to evince a total indifference or neglect of his children over a period of years.

of a custodial parent may materially alter circumstances. This potential could well lead to restoration to the child of the natural father's surname or, if this change of name were sustained, to yet another name. We do not dismiss out of hand the finding that at least one of the children has developed a parent-child identification with one other than his father. If this matures into a strong and permanent identification, at maturity the time may well come when the child may cause an appropriate change of surname as his or her voluntary act.

.Reversed.