**In the Matter of the Application of Audrey Davis SAXTON, mother and natural guardian of Robert Lynwood Dennis and Jessica Campbell Dennis, minors, to change their names to Robert Lynwood Saxton-Dennis and Jessica Campbell Saxton-Dennis.**

**No. 50811.**

Supreme Court of Minnesota.

Aug. 21, 1981.

Terrance J. Selb, Edina, for appellant.

Carlson Greiner & Law and H. Louise Olson, Minneapolis, for respondent.

OTIS, Justice.

This is an appeal from an order of the district court, Fourth Judicial District, denying Audrey Saxton's petition on behalf of her minor children to change their given surnames to a hyphenated surname consisting of their mother's maiden name and their father's surname. Four issues are presented: first, whether the trial court's reliance on our opinion in *Robinson v. Hansel*, 302 Minn. 34, 223 N.W.2d 138 (1974) to

resolve the propriety of the requested name change was proper; second, whether the evidence was sufficient to support the trial court's findings that the children's best interests favored retention of their given surname; third, whether the trial court erred in refusing to take the children's testimony and if so, was it reversible error; finally, whether the trial court, by denying the requested change violated constitutional rights of either the children or their mother. We affirm.

The petitioner changed her surname from "Dennis," her former husband's surname, to "Saxton," her maiden name, in December of 1976. A year earlier, Audrey Saxton and Frederick Dennis were divorced in West Virginia. Having permanent custody of their two minor children, Robert Lynwood Dennis and Jessica Campbell Dennis, Saxton and the children moved to Minneapolis shortly after the divorce.

In April of 1979, Saxton petitioned on behalf of Robert, then nine-years-old, and Jessica, then seven-years-old, to change their surnames from "Dennis" to "Saxton-Dennis." Dennis opposed the petition. At the hearing on June 8, 1979, Saxton appeared on behalf of herself and the children. Dennis, although not present, was represented by counsel.

Saxton and two expert witnesses, John Baudhuin [1] and Dr. Seymour Gross,[2] testified in favor of the name change.

In Saxton's words, the proposed surname was desirable for the children because it would "reflect their dual parentage and reflect the family unit, the Saxton family unit that we have established here in Minnesota after four years." Both Mr. Baudhuin and Dr. Gross agreed that the name change would be beneficial for the children

as it would enhance their self-esteem. However, each found the children to be happy and socially well-adjusted, suffering no ill effects from bearing only their father's surname.

Although Jessica and Robert did not testify, their views of the proposed surname can be gleaned from the record. Dr. Gross testified that the impetus for changing their surnames came from Robert's observation of and questions about the two surnames, "Saxton" and "Dennis" on the family's mailbox. Family discussions, lasting over a period of two years followed, resulting in the filing of the application to change their surnames to "Saxton-Dennis." Both children related to Dr. Gross that they earnestly desired the name change and were "excited" about the possibility of bearing a surname which combined both of their parents' surnames.

Dennis strives to maintain a close relationship with his children, despite the distance between their respective homes. Letters and phone calls are frequently and regularly exchanged; birthdays and holidays are remembered with gifts. In the summertime, Jessica and Robert visit their father for a month or longer.

Based on the foregoing evidence, the trial court denied the petition. This appeal followed.

■ We have previously considered the proper interpretation of Minn.Stat. § 259.11 (1980) [3] in resolving the issue of "whether a change in a child's name should be ordered over the objection of a natural parent * *." *Robinson v. Hansel*, 302 Minn. 34, 35, 223 N.W.2d 138, 140 (1974). In *Robinson* we noted that the best interests of the child controlled the resolution of the issue and

---

1. Mr. Baudhuin is an assistant to the rector of St. John's Episcopal Church, Minneapolis, and is a family and drug counselor at Parkview Treatment Center, St. Louis Park. He is acquainted with Saxton and her two children through church-related activities and gatherings between their two families.

2. Dr. Gross is the Director and Chief Psychologist for the Pilot City Mental Health Center, Minneapolis. He interviewed the children and

Saxton, together and separately, concerning the proposed name change.

3. Minn.Stat. § 259.11 (1980) provides in pertinent part: "Upon meeting the requirements of section 259.10, the court shall grant the application unless it finds that there is an intent to defraud or mislead or in the case of the change of a minor child's name, the court finds that such name change is not in the best interests of the child."

held "judicial discretion in ordering a change of a minor's surname against the objection of one parent should be exercised with great caution and only where the evidence is clear and compelling that the substantial welfare of the child necessitates such change." *Id.* at 36, 223 N.W.2d at 140. We are not persuaded by Ms. Saxton's arguments that we improperly interpreted Minn.Stat. § 259.11 (1980) in resolving the issue presented. We decline to alter the guidelines set in *Robinson.* The trial court's reliance on our opinion in *Robinson* was, therefore, proper.

■ This case does present an opportunity to elucidate our decision in *Robinson.* We first note that neither parent has a superior right to determine the initial surname their child shall bear. *In re Marriage of Jacobs,* 309 N.W.2d 303 (Minn. 1981); *cf.* Minn.Stat. § 518.17, subds. 2, 3 (1980) (sex of parent not a factor in determining custody or support obligations). However, once a surname has been selected for the child, be it the maternal, paternal, or some combination of the child's parents' surnames, a change in the child's surname should be granted only when the change promotes the child's best interests. In determining the child's best interests, the trial court may consider, but its consideration is not limited to, the following factors: the child's preference; *cf.* Minn.Stat. § 518.-17, subd. 1 (1980) (in custody determinations, court may consider child's preference); the effect of the change of the child's surname on the preservation and the development of the child's relationship with each parent; the length of time the child has borne a given name; the degree of community respect associated with the present and the proposed surname; and the difficulties, harassment or embarrassment, that the child may experience from bearing the present or the proposed surname. *See also In re Marriage of Schiffman,* 28 Cal.3d 640, 620 P.2d 579, 169 Cal.Rptr. 918 (1980); *In re Change of Name of Harris,* W.Va., 236 S.E.2d 426, 430 (1977) (Harshbarger, J., concurring); Note, *The Controversy over Children's Surnames: Familial Autonomy, Equal Protection and the Child's Best Inter-*ests, 1979 Utah L.Rev. 303. In weighing these factors to reach a decision, the trial court should set out its reasons for granting or denying the application to change the minor's surname. Because the child's welfare is paramount to the question of whether changing his or her name is proper, we encourage the trial court to consider the appointment of a guardian ad litem, and when it would be appropriate and helpful, to appoint a guardian ad litem at the expense of the parties. *See* Minn.Stat. § 518.-165 (1980).

■ Saxton's second contention is that the evidence was insufficient to support the trial court's determination. Careful review of the record convinces us that the trial court did not abuse its discretion by concluding the children's best interests were served by keeping their given surname. The evidence, however, would also have supported a contrary finding.

■ The trial court refused to take testimony from the children, Robert, then nine-years-old, and Jessica, then seven-years-old. Its refusal was apparently based upon its conclusion that the children were neither sufficiently mature nor sufficiently independent of Saxton to make a "discreet decision" regarding their surname. Saxton assigns this ruling as error.

We agree with Saxton's contention that the trial court erred in refusing to take testimony from Robert and Jessica. In *Robinson* we stated: "There is no issue, however, that the welfare of the children must ultimately be the controlling consideration in any change of status." *Robinson v. Hansel,* 302 Minn. 34, 35, 223 N.W.2d 138, 139, 140 (1974). Thus, the children's preferences are relevant to the determination. *Hall v. Hall,* 30 Md.App. 214, 351 A.2d 917 (1976); *cf.* Minn.Stat. § 518.17, subd. 1 (1980) (child's preference as to custody may be considered); *State v. Waslie,* 274 Minn. 564, 143 N.W.2d 634 (1966) (child's preference in custody determination given considerable weight). From Dr. Gross' testimony, it is evident that Robert and Jessica were capable of articulating their prefer-

ences. The exclusion of their testimony was, therefore, error. However, the error is harmless since it does not appear that their testimony "might reasonably have changed the result if it had been admitted." *Poppenhagen v. Sornsin Construction Co.,* 300 Minn. 73, 80, 220 N.W.2d 281, 285 (1974).

■ We are not persuaded by Ms. Saxton's numerous constitutional arguments. Her contentions all rest on the assumption that the paternal surname is given preference over the maternal surname in the initial naming of the child and in attempts to change the child's surname. A review of the applicable cases demonstrates that this assumption is ill-founded.

■ We have recognized that neither parent has a superior right to determine the initial surname of their child. No preference is accorded to either the paternal or maternal surname. *In re Marriage of Jacobs,* 309 N.W.2d 303 (Minn.1981). When one parent seeks to change the surname of a child, the other parent has standing to object and the resolution of the dispute hinges on the best interests of the child. *Robinson v. Hansel,* 302 Minn. 34, 223 N.W. 2d 138 (1974); Minn.Stat. § 259.11 (1980). Due deference is given, however, to the fact the child has borne a given surname for an extended period of time.

Finally, we note, as we stated in *Robinson,* "the time may well come when the child may cause an appropriate change of surname as his or her voluntary act." *Robinson v. Hansel,* 302 Minn. 34, 38, 223 N.W.2d 138, 141 (1974).

Affirmed.

WAHL, Justice (dissenting).

I must respectfully dissent. The application of the standard set out by this court in *Robinson v. Hansel,* 302 Minn. 34, 223 N.W.2d 138 (1974), for granting a change of a minor's surname to that of a stepfather over the objection of the natural father is inappropriate where the change sought is to use the surnames of both natural parents to form the child's surname.

Minn.Stat. § 259.11 (1980) specifies that a change of name for a minor will be granted unless the court finds that the change is not in the best interest of the child. In interpreting that statute in light of the *Robinson* facts, where the name change proposed would have eliminated the use of the children's given surname, which was the surname of their natural father, we held that "judicial discretion in ordering a change of the minor's surname * * * should be exercised with great caution and only where the evidence is clear and compelling that the substantial welfare of the child necessitates such change." *Id.* at 36, 223 N.W.2d at 140.

The policy considerations which led to the formulation of a standard requiring such a high burden of proof were (1) that the change in name might weaken the bond between the child and the noncustodial parent whose name the child bore, (2) that the parent's natural and appropriate desire was to have his children bear his name, and (3) that it was desirable for a child to know his parentage. *Id.* The same considerations do not support such a standard, however, when a parent seeks to change the child's surname so that no natural parent's name would be eliminated but both names would form the child's surname. The mother's interest in having her children bear and perpetuate her surname should be recognized as coextensive with the father's interest, as are other parental rights and responsibilities, such as custody and support. *See* Minn.Stat. § 518.17 (1980). Nor is there reason to believe, on the record before us, that the love and affection Frederick Dennis has for his children or the concern and support he gives them would be diminished in any way if they bore his name along with that of their mother as they wish to do.

The *Robinson* standard imposes an undue burden on the petitioner when the proposed name change would not eliminate the use of a natural parent's name but would add the name of the other natural parent. In this situation, instead of being required to show that the name change is necessary for the substantial welfare of the child, the peti-

tioner should be required to show only that the name change promotes the child's best interests. Thus, a change of the minor's surname would be appropriate where the change is beneficial for the child, even though the given name is not detrimental to the child's well-being.

I would reverse and remand for a determination of the best interests of Robert and Jessica in regard to the proposed name change. The testimony of the children should be received.

AMDAHL, Justice (dissenting).

I join in the dissent of Justice Wahl.