**AITKIN COUNTY FAMILY SERVICE AGENCY and Charlene DeVonne Evelyn Hoglund, Appellants,**

v.

**Frank Lee GIRARD, Respondent.**

No. C7–86–283.

Court of Appeals of Minnesota.

July 29, 1986.

John R. Leitner, Aitkin County Atty., Anne L. Mohaupt, Asst. County Atty., Aitkin, for appellants.

Richard A. Zimmerman, Aitkin, for respondent.

Considered and decided by CRIPPEN, P.J., and LESLIE and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

Charlene Hoglund appeals from the trial court's judgment changing the surname of her two minor children from Hoglund to Girard, the surname of the children's biological father. We reverse.

## FACTS

Appellant Charlene Hoglund and respondent Frank Girard lived together for about six years and had two children, Orville Lee, born February 18, 1981, and Bobby Jean, born October 11, 1982. Sometime after Bobby Jean was born, respondent moved out of the home where he had been living with appellant and the children. In No-

vember 1985, appellant brought a paternity action against respondent. Respondent acknowledged his paternity and was accordingly adjudicated the father of the children.

In the same proceeding, respondent petitioned the court to change the children's surname from Hoglund to Girard. The trial court record shows that when the children were born, both were given appellant's surname of Hoglund. In their daily life, they have always used the surname Hoglund. Respondent, however, also testified that "all his friends and everybody" called the children "Girard" when he was living with appellant. The children have lived continuously with appellant; respondent has visited with them about once a month since he and appellant stopped living together.

Respondent testified that he does not care if the children continue to use Hoglund as their surname in their daily lives, but that he nevertheless wants their name to be changed legally to Girard. He explained that he was the only son in his family that named a son after his father, that his father had expressed a dying wish that the Girard name be carried forward, and that he wanted to fulfill his father's wish. He also expressed his ongoing desire to marry appellant and raise the children together with her, and stated that even if he and appellant do not marry, he still wants the children to have his name in recognition that he is their father.

Appellant testified that she objected to a change in the children's surname and that the change would confuse them. She testified that the children, now ages 5 and 3, are not old enough to meaningfully tell her which name they would like to keep. In regard to respondent's desire to marry her, appellant testified that she would "like to give it a try" but that she would first want to live with respondent "for awhile and see how things work out."

In addition to the parties' testimony, the court also considered a letter from an Aitkin County Family Service Agency social worker, which recommended that the children's surname remain Hoglund. The social worker wrote that the benefit of changing the name is outweighed by the possible confusion and disruption that could ensue, and that because appellant has been and continues to be the primary parent of the children, her wish to maintain the Hoglund name should be granted.

The trial court issued findings that appellant and respondent are the parents of the two children and that respondent "is desirous of changing the surnames of the children to Girard." The court then ordered that the children's name be changed to Girard. Charlene Hoglund appeals from the judgment entered upon the court's order.

## ISSUE

Did the trial court abuse its discretion in ordering that the children's surname be changed?

## ANALYSIS

A trial court shall grant an application for a change in a minor child's name unless the court finds that the change is not in the best interests of the child. *See* Minn.Stat. § 259.11 (1984). Applying the statute, the Minnesota Supreme Court has held that the "welfare of the children must ultimately be the controlling consideration in any change of status." *Robinson v. Hansel*, 302 Minn. 34, 35, 223 N.W.2d 138, 140 (1974).

In *Robinson*, the court focused on the "significant societal implications" of changing a child's name from the natural father's name following the divorce of the child's parents and the grant of custody to the child's mother. The court noted that the "link between a father and child in circumstances such as these is uncertain at best, and a change of name could further weaken, if not sever," the bond between a noncustodial father and the child. *Id.* at 35–36, 223 N.W.2d at 140.

This concern is notably absent from the present case, where the children's parents were never married and the children have never regularly used their father's name. Here the father does not oppose change but seeks it. In addition, independent of the surname of the children, both parties

agree that respondent has established a positive and loving relationship with the children, that both children know respondent is their father, and that he sees the children on a regular basis. Respondent's testimony that his primary interest is to fulfill his father's wishes and not to ensure that the children identify with the name Girard in their daily lives also indicates that the name change would not affect his ongoing parental relationship with the children.

In 1981, the supreme court took the "opportunity to elucidate [its] decision in *Robinson*." *In re Saxton*, 309 N.W.2d 298, 301 (Minn.1981), *cert. denied*, 455 U.S. 1034, 102 S.Ct. 1737, 72 L.Ed.2d 152 (1982). In *Saxton*, the court reaffirmed that a name change should be granted "only when the change promotes the child's best interests." *Id.* In *Robinson*, the court said that change of a child's surname over the objection of a parent should be considered with "great caution" and only where "the evidence is clear and compelling that the substantial welfare of the child necessitates such change." *Robinson*, 302 Minn. at 36, 233 N.W.2d at 140. *Saxton* specified several factors that trial courts may consider in determining the child's best interests. Further, the court stated that trial courts need not limit their consideration to those factors, but that they should set out their reasons for granting or denying an application to change the child's surname. *Id.*

Other than stating that respondent desired the name change, the trial court here did not state reasons for granting respondent's petition. Most notably, the trial court made no findings on the best interests of the children.

Two of the factors articulated in *Saxton* are particularly important here, namely,

the length of time the child has borne a given name, and the difficulties, harassment or embarrassment that the child may experience from bearing the present or the proposed name.[1] The record shows that the children have borne the Hoglund name throughout their lives and that appellant testified that a change of name would cause adjustment difficulties for them. The record also includes the recommendation from the Aitkin County social worker, a recommendation that the trial court specifically waited to receive before holding the hearing on the proposed name change, which states her belief that any benefit of a name change would be outweighed by the possible confusion and disruption that could result from the change.

In addition, absent evidence that the change will be detrimental to the preservation of the children's relationship with their father, we see no reason to put aside the preference expressed by their custodial parent, the children's mother. It is in the best interest of such young children to provide them with stability and continuity. *See Pikula v. Pikula*, 374 N.W.2d 705, 711 (Minn.1985). The preservation of the family unit as they have always known it, including having the same name as their custodial parent, is an element of that continuity. Appellant has been and continues to be primarily responsible for the welfare of the children. Under these circumstances, the evidence does not show that the substantial welfare of the children necessitates a change of name.

The absence of particularized findings as well as the trial court's focus on respondent's desire to change the children's name indicates that the trial court relied on the *Robinson* doctrine without considering its development in *Saxton*.[2] *Robinson* refers to

1. The other factors noted in *Saxton* do not bear on the present case. They are: (1) the child's preference (the children here are too young to express a preference); (2) the effect of the change on the child's relationship with each parent (the relative unimportance of this factor has already been noted in the discussion on *Robinson* ); and (3) the degree of community respect associated with the present and the pro-

posed names (neither parent testified that one name evokes a greater degree of community respect than the other).

2. At the hearing on the petition, counsel for appellant cited *Robinson* but not *Saxton* to the court as controlling authority. The judge declined to make a decision immediately follow-

the natural and appropriate desire of the father to have his children bear and perpetuate his name, as well as * * * the desirability of the child knowing his own parentage.

*Robinson*, 302 Minn. at 36, 223 N.W.2d at 140. *Saxton*, however, in discussing that concern, refers to the effect of a name change on the child's relationship with *each* parent. *Saxton*, 309 N.W.2d at 301. Moreover, although this factor was of primary concern in *Robinson*, both that case and *Saxton* included it as only one among several factors to be considered. *Id.* at 302. Here, however, the court's findings do not reflect consideration of any other relevant factors.

The trial judge's questioning of the parties also reveals his reliance on a mistaken presumption of law that may have influenced the court's final decision. The judge expressed his belief that if the parties were to marry, the children's names would automatically convert to Girard. This is error; because the surname on the children's birth certificates is Hoglund, an application for a name change is necessary regardless of the parties' marital choices. *See* Minn.Stat. § 259.10 (1984). The merit for a change of name may increase upon the marriage of the parties; however, until application is made and granted, their names will continue to be Hoglund.

 We recognize the validity of respondent's desire to perpetuate his family's name. This desire, however, is primarily aimed towards Orville, who was named after respondent's father, and not towards Bobby Jean, making it even less clear that the change of name would be in the best interests of both children. As noted in *Robinson*, the children may some day voluntarily decide to change their name to Girard. *See Robinson*, 302 Minn. at 38, 223 N.W.2d at 141. At the present time, however, the evidence is insufficient to show that a change of name would promote their best interests.

ing the hearing, stating that he first wanted to

## DECISION

The trial court erred in granting respondent's petition to change the surname of the parties' children over appellant's objection. Respondent's reasons for desiring a change of the children's names are not clear and compelling evidence that the substantial welfare of the children necessitates a change.

Reversed.