In the Matter of the WELFARE OF C.M.G.

No. C2–93–2011.

Court of Appeals of Minnesota.

May 24, 1994.

Douglas L. Ruth, Steele County Atty., Scott L. Schreiner, Asst. County Atty., Owatonna, for Steele County and Kristine J. Beck.

Dean K. Rietz, Rietz, Rietz & Rietz, Owatonna, for David A. Ellis.

Catherine Brown Furness, Catherine Brown Furness Law Office, Owatonna, for David Leroy Lyke.

Considered and decided by DAVIES, P.J., and SHORT and KLAPHAKE, JJ.

## OPINION

DAVIES, Judge.

Mother appeals judgment establishing paternity in one presumed father rather than in another presumed father, ordering child support, and changing the child's name. We

---

1. Represented by county attorney pursuant to title IV–D of the Social Security Act, 42 U.S.C.

affirm the paternity determination, but reverse and remand the name change and support order.

## FACTS

Appellant Kristine Beck[1] gave birth to C.M.G. on July 10, 1987. At the time, Beck ("mother") was living with respondent David Lyke. Lyke executed a declaration of parentage, filed it with the division of vital statistics, and held C.M.G. out as his child. Lyke and mother separated in 1988.

Mother then resumed dating respondent David Ellis. Some time in 1990, mother and Ellis discussed the possibility that Ellis might be C.M.G.'s biological father. About the same time, Lyke began to question whether he was C.M.G.'s biological father. Blood tests performed on Lyke and C.M.G. established that Lyke was not the biological father.

Mother commenced a paternity proceeding in January 1992 seeking a judicial declaration that Ellis was the father of C.M.G. Lyke (who had not been served or otherwise notified) intervened, asking that he, not Ellis, be declared the father. Genetic test results obtained in June 1992 indicated a 99.82 percent likelihood that Ellis was the biological father.

After a bench trial, the court dismissed mother's paternity action against Ellis and, based on Lyke's petition, adjudicated Lyke the father. The court granted joint physical custody to mother and Lyke, ordered Lyke to pay $200 child support per month, and ordered that C.M.G.'s surname be changed from mother's maiden name to Lyke.

Mother appeals from the judgment.

## ISSUES

I. Did the court err in determining that the presumption of Lyke's paternity should prevail over the conflicting presumption pointing to Ellis?

II. Did the court err by failing to make the requisite findings to explain its order changing the child's surname?

§§ 651–69 (1988).

III. Did the court err by failing to make the requisite findings to explain its child support decision?

## ANALYSIS

### I. Paternity

The Minnesota Parentage Act controls a determination of paternity. *Wilson v. Speer*, 499 N.W.2d 850, 852 (Minn.App.1993), *pet. for rev. granted* (Minn. July 19, 1993), *appeal withdrawn* (Aug. 16, 1993). Whether the trial court properly interpreted the parentage act is a question of law, which we review without deference to the trial court's conclusions. *Id.*

The parentage act is founded on several presumptions of paternity. These presumptions are not conclusive of paternity, but rather create a functional set of rules that point to a likely father. The presumptions serve the practical purpose of establishing paternity in the eyes of the law and the community until something more is done either to attack the presumption or to establish by action a father who will be viewed as conclusive in the eyes of the law. The presumptions also serve a second purpose—to provide a presumption to be applied in an action to establish paternity.

Although the parties raise a variety of arguments regarding the validity and hierarchy of various paternal presumptions, the issue, which is squarely raised in this action, is how a situation of conflicting presumptions of paternity is properly worked out under the parentage act.

2. Mother's argument that Lyke's declaration is invalid is without merit.

In urging invalidity, mother relies first on section 257.55, subdivision 1(e) (1992). But section 257.55, subdivision 1(e), provides that a valid declaration may not be effected if "another man is presumed under this clause to be the child's father." Thus, the declaration is invalidated only when, at the time of the declaration, there is an existing presumption of another man's paternity.

Mother relies next on section 257.34, subdivision 3 (1992), which provides that a declaration of parentage shall not affect the rights "arising out of a parent-child relationship of any person not a signatory to the declaration claiming to be the parent." This likewise only applies to rights (including presumptions) then existing.

### A. Presumptions of Lyke's and Ellis's Paternity

The execution of a declaration of parentage filed with the state registrar of vital statistics creates a presumption of paternity. Minn.Stat. § 257.55, subd. 1(e) (1992). On July 14, 1987, four days after C.M.G.'s birth, Lyke executed a declaration of parentage. He executed a second declaration on September 9, 1987, and filed it on October 13, 1987, pursuant to Minn.Stat. § 257.34, subd. 1 (1992). Thus, a valid presumption of Lyke's paternity arose in October 1987.[2]

A presumption of paternity also arises upon genetic test evidence establishing a 99 percent or greater likelihood that a man is the father. Minn.Stat. § 257.55, subd. 1(f) (1992). Here, the 1992 blood tests on Ellis, mother, and C.M.G. established a 99.82 percent likelihood that Ellis is the father, creating a presumption of Ellis's paternity.

### B. Actions to Declare the Existence of Paternal Relationship or the Nonexistence of a Paternal Presumption

The parentage act provides for two kinds of actions: actions to declare affirmatively the existence of a paternal relationship (usually based on a presumption of paternity); and actions to declare the nonexistence of a presumption of a paternal relationship (to cancel a presumption of paternity). Minn.Stat. § 257.57, subds. 1, 2 (1992).[3] The parties dispute what type of action has been brought here.

Here there was no presumption of Ellis's paternity when Lyke executed the declaration in 1987; and Ellis was not then "claiming to be the parent." Thus, Lyke's 1987 declaration of parentage was effective.

3. No judicial action is required to raise a presumption of paternity—which is not a final determination of paternity. Rather, the parentage act allows judicial intervention only to negate a presumption or, on the affirmative side, to conclusively adjudicate paternity—by declaring the existence of a paternal relationship either based on a single presumption or by resolving a conflict between conflicting presumptions.

Lyke argues that mother's January 1992 action is an action to declare the *nonexistence* of Lyke's paternal relationship and is thus time-barred by a three-year statute of limitations imposed by section 257.57, subdivision 2(2). Under that section, a person may only bring an action to declare the nonexistence of a paternal relationship within three years of execution of the declaration. Minn.Stat. § 257.57, subd. 2(2) (1992). The trial court agreed and dismissed mother's action.

Mother, on the other hand, argues that the court erred in dismissing her action to declare Ellis the father because she did not seek a declaration of the *nonexistence* of Lyke's presumed relationship; rather, she sought a declaration of the *existence* of Ellis's relationship based upon Ellis's genetic-evidence presumption. We agree with the mother's argument, and hold that the trial court erred in dismissing her action because an action to declare the existence of a paternal relationship based on the Ellis presumption is not subject to any statute of limitations. *See* Minn.Stat. § 257.57, subd. 2(1) (1992) (person may bring action *at any time* to declare existence of paternal relationship based on a presumption arising under section 257.55, subdivision 1(f)).[4] Although mother's action to declare Ellis's paternal relationship was based on a presumption contrary to Lyke's presumption, it is not an action simply to declare the nonexistence of Lyke's pater-

nal presumption. *See Kelly v. Cataldo*, 488 N.W.2d 822, 824 n. 3 (Minn.App.1992) (genetic test evidence of one man's paternity establishes conflicting presumption in his favor rather than rebutting existing presumption in favor of another man), *pet. for rev. denied* (Minn. Sept. 15, 1992).

The parentage act contemplates the possibility of conflicting presumptions. *See* Minn. Stat. § 257.55, subd. 2 (addressing resolution of conflicting presumptions). Because the statute of limitations applicable to an action merely to rebut the presumption of Lyke's paternity does not apply to this case, the court erred in concluding that mother's action was time-barred.[5] This error is non-prejudicial, however, because the court proceeded with an alternative analysis upholding Lyke's presumption on other grounds.

■ Mother's other argument is that the blood tests showing that Lyke is not the biological father automatically rebutted the presumption of Lyke's paternity. But a presumption of paternity can only be rebutted "in an appropriate action."[6] Minn.Stat. § 257.55, subd. 2 (1992). Once a presumption arises, a timely legal action under section 257.57 is required to cancel the presumption. Thus, the test results alone do not cancel the presumption of Lyke's paternity, even were that presumption not now protected by a three-year statute of limitations.[7]

---

4. Because Ellis's blood test results establishing the presumption of his paternity were not obtained until June 1992—some six months *after* appellant initiated her action, there was at commencement no existing presumption of Ellis's paternity on which to base the action. But the test results were obtained during the pendency of her action and before the trial court made its decision.

5. Lyke's alternative statute of limitations argument based on the 60-day limitation of section 259.261 is without merit. Section 259.261 only limits the time to challenge an affidavit stating an intention to retain parental rights. Minn.Stat. § 259.261, subd. 3 (1992). Although a declaration of parentage may qualify as a section 259.-261 affidavit, to qualify, the declaration must be filed within 90 days of the child's birth. Minn. Stat. § 257.34, subd. 1(d) (1992). But here the declaration was not filed until October 13, 1987, more than 90 days after C.M.G.'s birth on July 10, 1987. Moreover, the statute provides parties

other than those who have executed the declaration with a means to challenge the assertion of paternity. But the notice requirement of section 259.261 cannot meaningfully be applied to one who has himself executed the declaration.

6. We note that the parentage act does not address the situation—not relevant here—where conflicting presumptions arise, but no action is ever brought to address the conflict. In such a situation, a child could be left with multiple presumed fathers, a result with problematic ramifications in the event, for example, the child died with a substantial estate to be divided among heirs. The legislature may want to establish a hierarchy or set of presumptive priorities to resolve—by default—such a conflict.

7. Furthermore, Lyke's test results were not obtained until September 14, 1990, more than three years after the execution of the later declaration and thus not within the three-year statutory period of section 257.57, subdivision 2(2).

Accordingly, we are left with two valid—but conflicting—presumptions.

### C. Conflicting Presumptions

The real issue here, then, is whether the court in an action to establish a father-child relationship—to declare paternity—properly applied the statutory standard for resolving a conflict between valid presumptions.

■■ Where two or more paternity presumptions conflict, "the presumption which on the facts is founded on the weightier considerations of policy and logic controls." Minn.Stat. § 257.55, subd. 2 (1992). Here, the court concluded that, even if mother could maintain her action, the presumption of Lyke's paternity should prevail due to the best interests of the child. Mother argues that the court erred by considering C.M.G.'s best interests. But the absence of any express statutory reference to the "best interests of the child" does not preclude consideration of that factor. The statute plainly directs the court—in broad terms—to consider policy and logic. *Id.* We conclude that a child's best interests is a valid policy factor in resolving a conflict between competing paternity presumptions.

Mother argues that this court rejected any consideration of the child's best interests in paternity determinations in *Spaeth v. Warren,* 478 N.W.2d 319, 323 (Minn.App.1991), *pet. for rev. denied* (Minn. Jan. 30, 1992) (child's best interests are irrelevant to the biological determination of paternity). But *Spaeth* involved a paternity action by the undisputed biological father. 478 N.W.2d at 320. Although the child's mother—who opposed his action—had since married, her husband enjoyed no presumption of paternity.

*Id.* at 322. Thus, the court rejected the mother's argument that the child's best interests must be considered because the parentage act does not require consideration of that factor to adjudicate paternity based on a single presumption. But this court has since clarified that *Spaeth* 's rejection of the child's best interests is not applicable precedent where there are conflicting presumptions of paternity. *Kelly,* 488 N.W.2d at 826 n. 5. Where competing presumptions of paternity exist, the determination of paternity is no longer solely an issue of biological fact. *See id.* at 826–27 (absent a legislative declaration of a preference for biologically based presumptions, courts must determine the weightier presumption).[8]

■ The concurrence argues that Lyke's presumption controls simply because it can no longer be rebutted. Although the statute is not entirely clear on this point, we think that section 257.55, subdivision 2, contemplates a conflict between an irrebuttable presumption and a rebuttable presumption—with the possibility that under different facts, the rebuttable presumption could be deemed controlling over the otherwise irrebuttable presumption. By allowing for judicial flexibility in resolving such conflicts, this result ensures that a paternity determination will be based on a child's best interests rather than a mechanical statute of limitations. *See* Deborah A. Ellingboe, Note, *Sex, Lies, and Genetic Tests: Challenging the Marital Presumption of Paternity Under the Minnesota Parentage Act,* 78 Minn.L.Rev. 1013, 1044 (1994) (consideration of child's best interests to resolve conflicting presumptions "allows the courts flexibility in dealing with modern,

Thus, mother could not have challenged Lyke's presumption with those first test results even if she had initiated her action immediately upon learning of the results.

8. When the parentage act was first adopted in 1980, it was assumed that the effort was to find the biological father and then to adjudicate that person the legal father. The precision with which the biological father can now be identified and the recognition of other considerations has since made the search something more than a search for a biological father. This is demonstrated by the fact that when the legislature add-

ed the presumption established under the genetic test presumption, Minn.Stat. § 257.55, subd. 1(f), it did not make that presumption conclusive, but rather treated it simply as the sixth presumption. Thus, though "policy and logic" may originally have been directed at how to measure the likelihood of biological parenthood, it now has a different objective. We note that sections 257.52 and 257.54 still define parent-child relationships in a biologically restrictive (and circular) fashion. Minn.Stat. §§ 257.52–.54 (1992). Accordingly, we believe that the legislature should remove these traces of the original lodestar of the parentage act—that is, biological.

nontraditional families, while protecting all interested parties.").

When determining the controlling presumption, the court must examine the particular facts of the case. *Kelly*, 488 N.W.2d at 827. Here, the facts support the trial court decision that Lyke's presumption should lead to a declaration of paternity, that is, should prevail over Ellis's presumed paternity. The trial court found that Lyke wants to continue to be C.M.G.'s father, that C.M.G. views Lyke as his father and has bonded with Lyke and Lyke's parents, and that Ellis does not want to develop a paternal relationship with C.M.G. The court also found that Lyke is willing and able to support C.M.G. financially. Finally, the court found that mother's motives in seeking an adjudication of Ellis's paternity were simply to exclude Lyke from C.M.G.'s life. (There was speculation in oral argument that mother's husband may want to adopt.)

In light of these findings, we affirm the trial court's conclusion that Lyke's paternity claim should prevail.

## II. Change of Child's Surname

After declaring Lyke the father, the trial court changed C.M.G.'s surname to Lyke. This court reviews name changes under an abuse of discretion standard. *Aitkin County Family Serv. Agency v. Girard*, 390 N.W.2d 906, 908 (Minn.App.1986).

When granting or denying a petition for a name change, the court must set forth clear and compelling reasons for its decision. *Robinson v. Hansel*, 302 Minn. 34, 36, 223 N.W.2d 138, 140 (1974). The court must consider the child's best interests, as determined by (1) how long the child has had the current name, (2) any potential harassment or embarrassment the change might cause, (3) the child's preference, (4) the effect of the change on the child's relationship with each parent, and (5) the degree of community respect associated with the present and proposed names. *In re Saxton*, 309 N.W.2d 298, 301 (Minn.1981), *cert. denied*, 455 U.S. 1034, 102 S.Ct. 1737, 72 L.Ed.2d 152 (1982). Here, the court did not provide any findings indicating its consideration of these factors. The failure to provide findings is an abuse of

discretion. *Girard*, 390 N.W.2d at 909. Thus, we reverse and remand for the requisite findings.

## III. Child Support

The court ordered joint legal and physical custody of C.M.G. Mother does not challenge this decision. The court also ordered Lyke to pay $200 per month in child support. Mother argues that the court failed to make the requisite findings when awarding child support. Where the court orders joint physical custody, child support is governed by the principles outlined in *Hortis v. Hortis*, 367 N.W.2d 633, 635-36 (Minn.App. 1985), and *Valento v. Valento*, 385 N.W.2d 860, 862-63 (Minn.App.1986), *pet. for rev. denied* (Minn. June 30, 1986). The basis for the $200 figure is unclear. Accordingly, we reverse and remand for a redetermination of child support under *Hortis* and *Valento*.

Mother also seeks certain funds deposited by Lyke with, and held in trust by, Lyke's attorney. Lyke voluntarily began paying mother child support of $200 per month after Lyke and mother separated, even though there was no prior court order to pay support. But, starting in November 1992, mother refused to accept the payments. Lyke then made the payments to the trust fund. On these facts, we find no error in not requiring Lyke to pay to mother those voluntarily paid trust funds.

## DECISION

The trial court did not err in adjudicating Lyke the father. The court erred in not providing the requisite findings to explain the child support award and the change in the child's surname.

**Affirmed in part, and reversed and remanded in part.**

SHORT, Judge (concurring specially).

I would affirm the trial court's decision because a presumption of paternity based on a declaration of parentage becomes conclusive if not challenged within three years of the declaration. Minn.Stat. § 257.57, subd. 2(2) (1992); *Wilson v. Speer*, 499 N.W.2d 850, 854, n. 3 (Minn.App.), *pet. for rev. granted*

(Minn. July 19, 1993); *see Pierce v. Pierce,* 374 N.W.2d 450, 452 (Minn.App.) (three-year statute of limitations applies by analogy where contrary rule would be inconsistent with treatment of presumed fathers and would undermine purpose of promoting legitimacy), *pet. for rev. denied* (Minn. Nov. 4, 1985). I write separately because I do not find competing presumptions of paternity.

The record demonstrates (1) four days after C.M.G.'s birth, Lyke and the mother executed a Declaration of Parentage, (2) the declaration was properly filed with the Department of Vital Statistics, (3) Lyke and the mother announced to all that Lyke is the biological father of C.M.G. and expenses associated with C.M.G.'s birth were paid by Lyke's insurance, (4) for the last six years, C.M.G. has stayed with Lyke at least three days each week and called Lyke "daddy," (5) Lyke has paid the mother $200 per month as child support since April 1988, and (6) no one challenged the declaration of parentage until this lawsuit. Under these facts and in light of Minn.Stat. § 257.57, subd. 2(2), the three-year statute of limitations bars this lawsuit to nullify the existence of Lyke's relationship to C.M.G.