*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0702**

In re the Matter of:
Application of Laura Beth Long for a Change of Name on behalf of A. W. R. Q.

**Filed January 4, 2016
Reversed and remanded
Reilly, Judge**

Olmsted County District Court
File No. 55-CV-14-6894

Kay Nord Hunt, Lommen Abdo, P.A., Minneapolis, Minnesota (for appellant)

Laura Beth Long, Rochester, Minnesota (pro se respondent)

Considered and decided by Schellhas, Presiding Judge; Rodenberg, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

In this name change dispute, appellant-father argues that the district court abused its discretion by changing the surname of the parties' child to that of respondent-mother and her current husband. We reverse and remand.

**FACTS**

A.W.R.Q. was born in January 2012 and respondent-mother, Laura Beth Long, gave the child the surname of appellant-father, Nicolai Quinn. The parties never married. Respondent did not make an application for a name change in March 2012 when appellant

pleaded guilty to possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and began serving a 97-month sentence. Nor did she seek to change A.W.R.Q.'s name in November 2013 when the parties entered a stipulated judgment and decree awarding respondent full legal and physical custody of child. In 2014, respondent married and changed her surname to that of her new husband. Approximately two months later, respondent made an application to change A.W.R.Q.'s surname from appellant's surname to her husband's surname. The district court granted the name change over appellant's objection. Citing the *Saxton* factors, the district court found that the name change was in the child's best interest. *In re Saxton*, 309 N.W.2d 298, 301 (Minn. 1981).

## D E C I S I O N

"We review a district court's grant of a request to change a child's name for abuse of discretion." *Foster v. Foster*, 802 N.W.2d 755, 756 (Minn. App. 2011). "A district court abuses its discretion when evidence in the record does not support the factual findings, the court misapplied the law, or the court settles a dispute in a way that is against logic and the facts on record." *Id.* at 757 (quotation omitted).

"If neither parent of the child opposes the request to change the child's name, the district court must grant the request after determining that the name change is in the child's best interests." *Foster*, 802 N.W.2d at 757 (citing Minn. Stat. § 259.11(a)). However, "ordering a change of a minor's surname against the objection of one parent should be exercised with great caution and only where the evidence is clear and compelling that the substantial welfare of the child necessitates such change." *Robinson v. Hansel*, 302 Minn. 34, 36, 223 N.W.2d 138, 140 (1974).

2

A special concern arises when a parent attempts to change a minor child's surname from that of a natural parent to that of a stepparent. *Robinson*, 302 Minn. at 35, 223 N.W.2d at 140. "A change in surname, so that a child no longer bears his father's name, . . . obviously is of inherent concern to the natural father" and "is in a real sense a change in status having significant societal implications." *Id.* "Society has a strong interest in the preservation of the parental relationship." *Id.* "A change of name may not be in the child's best interest if the effect of such change is to contribute to the further estrangement of the child from a father who exhibits a desire to preserve the parental relationship." *Id.* at 36, 223 N.W.2d at 140 (quotation omitted).

Appellant argues that the district court abused its discretion by failing to apply the clear and compelling evidence standard enunciated in *Robinson*. 302 Minn. at 35, 223 N.W.2d at 140. Instead of applying the *Robinson* standard the district court stated that "once a surname has been selected for a minor child" a change "should be granted only when the change promotes the minor child's best interests" and addressed the *Saxton* factors. 309 N.W.2d at 301. In *Saxton* the Minnesota Supreme court "elucidated" the decision in *Robinson* by providing nonexclusive factors for a court to consider when granting a name change. *Id.* The *Saxton* factors are: (1) the child's preference; (2) the effect of the change on the child's relationship with each parent; (3) how long the child has had the current name; (4) the degree of community respect associated with the present and proposed names; and (5) any potential harassment or embarrassment the change might cause. *Id.* The *Saxton* best-interest determination must be applied within the standard articulated in *Robinson*.

3

Here, the district court concluded that a change of surname should be granted "when the change promotes the minor child's best interests." While the district court based its decision on what it thought was in the child's best interest, it failed to consider whether there was clear and compelling evidence that the change was necessary for the substantial welfare of the child. Therefore, the district court abused its discretion by misapplying the law. *Foster*, 802 N.W.2d at 757.

*First factor: The minor child's preference*

The district court found that the child is only three years old and "of insufficient age to express a preference regarding the proposed name change." The district court did not abuse its discretion when it found that this factor is neutral.

*Second factor: Effect of the name change on the preservation and development of the child's relationship with each parent*

In *Robinson* the supreme court discussed society's "strong interest in the preservation of the parental relationship" and stated a name change is not in the child's best interest if its effect "is to contribute to the further estrangement of the child from a father." 302 Minn. at 35, 223 N.W.2d at 140. The district court determined the effect of the name change would be to develop the relationship with respondent, stepfather, and any future half-siblings A.W.R.Q. may have. With regard to appellant, it found that "because there is no existing parental relationship between Father and the minor child, there is no relationship to preserve" and "the development of Father's relationship with the minor child does not and will not depend on whether the minor child has the same surname as Father." Although, due to his incarceration, appellant's current ability to maintain a

relationship with A.W.R.Q. is limited, a review of the record indicates appellant provided financial support and a home for the child prior to his incarceration and "exhibits a desire" to maintain a relationship with A.W.R.Q. *Id.* at 36, 223 N.W.2d at 140. Appellant is scheduled to be released from prison, at the latest, when the child is eight years old. The district court gave more weight to developing the child's relationship with his stepfather and any yet-to-be-born half-siblings than it did to preserving whatever parental relationship exists with appellant. The district court misapplied the law because it focused its analysis on the child's relationship with the mother's husband and potential future half-siblings and not on the effect the name change would contribute to the further estrangement of A.W.R.Q. from his father. *See id.*

*Third factor: The length of time the minor child has had the current surname*

The district court found that the child does not read, spell, or realize the significance of his last name, and that three years is not a substantial period of time to bear a surname. It concluded this factor favored a name change. We have previously found that when a child was known by her current name for six years it was "long enough for the child to have developed a sense of identity through her name." *LaChapelle v. Mitten*, 607 N.W.2d 151, 167 (Minn. App. 2000) (citing *Saxton*, 309 N.W.2d at 302 (noting due deference is given to the fact that the child has borne a given surname for an extended period of time)), *review denied* (Minn. May 16, 2000). On the other end of the spectrum, when a child was "not yet two" this court affirmed a district court's grant of a name change. *Foster*, 802 N.W.2d at 758. Although granting a name change when a child has only had the name for three years might not cause harm to a child because the child cannot fully appreciate what

it means to have a surname, it does not logically follow that having a name for only three years necessarily *favors* granting a name change. Therefore, absent more this factor is neutral, and the district court abused its discretion by making a finding that is not supported by the evidence in this record: that having a name for three years necessarily favored granting a name change. *See id.* at 757.

*Fourth and Fifth Factors: Degree of community respect associated with the present and proposed surname and the difficulties, harassment, or embarrassment from bearing the present or proposed surname*

In *Robinson* the supreme court reversed the district court when it granted the mother's request to add the surname of her present husband to her children's surname which was the same as their natural father's surname. 302 Minn. at 36, 223 N.W.2d at 140. The same concern is present in this case, and we note, unlike the mother in *Robinson*, respondent seeks to completely replace appellant's surname with the surname of her current husband.

We are mindful that appellant's conviction presents concern related to the degree of community respect associated with the present surname, and that the surname could lead to difficulties or embarrassment in the future. However, on this record, the concern under these factors is speculative. A.W.R.Q. and respondent do not currently live in the community where appellant was convicted. Quinn is a relatively common surname. The news article offered as evidence that there was media coverage of the conviction was over three years old, and the record does not contain evidence that appellant's conviction continues to be covered by the media. There is no evidence in the record that the child is currently experiencing difficulties, harassment, or embarrassment from bearing the present

6

surname, and on these facts, mere speculation that a child could have difficulties in the future is not clear and compelling evidence necessitating a name change.

We also note the timing in this case. Any concerns regarding the potential negative effect of bearing appellant's surname existed at the time of appellant's conviction. Respondent did not petition for a name change when appellant was charged criminally, convicted, or incarcerated in prison, nor did she petition for a name change when the parties determined custody one and a half years later. Instead, she petitioned for the name change two months after she married. In *Robinson*, the supreme court was concerned when the mother married and wished to change the children's surname to that of her husband.[1] 302 Minn. at 36, 223 N.W.2d at 140. That concern is present here based on the timing of the name change and the choice of surname.

The district court abused its discretion by misapplying the law when it failed to apply the proper standard in granting the name change over appellant's objection. We reverse and remand with directions to the district court to enter an order that the child's surname be restored to that of appellant.

**Reversed and Remanded.**

---

[1] At oral argument, appellant conceded that if respondent had applied to change the child's surname to her family name appellant would be on "weaker footing." *See Foster*, 802 N.W.2d at 756, 759 (holding it was not an abuse of discretion when the district court granted a name change when a mother sought to add her family name to the child's surname, which was the same as the child's father).