*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0249**

David Kaslow Swan, petitioner,
Respondent,

v.

Heidi Bloedel Moon,
Appellant.

**Filed December 18, 2023
Affirmed
Klaphake, Judge\***

Hennepin County District Court
File No. 27-FA-20-2786

John DeWalt, Melissa Chawla, Dewart, Chawla + Saksena, LLC, Minneapolis, Minnesota (for respondent)

Elizabeth M. Cadem, Erik F. Hansen, Burns & Hansen, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Ede, Presiding Judge; Bratvold, Judge; and Klaphake, Judge.

**NONPRECEDENTIAL OPINION**

**KLAPHAKE**, Judge

In this parenting dispute, appellant-mother argues that the district court erred by (1) denying her request to change the child's surname, (2) denying her a continuance,

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

(3) ruling that respondent-father did not commit domestic abuse, and (4) denying her request for need-based attorney fees. We affirm.

## DECISION

Respondent-father David Kaslow Swan and appellant-mother Heidi Bloedel Moon were romantically involved and have one joint child (the child) born in December 2015. After the parties separated in March 2020, father petitioned for joint custody. The district court awarded the parties joint legal and joint physical custody. Mother challenges several of the district court's rulings.

### *The child's surname*

Mother first argues that the district court abused its discretion by denying her request to change the child's surname to include mother's surname. We review the denial of a name-change request for an abuse of discretion. *In re Welfare of C.M.G.*, 516 N.W.2d 555, 561 (Minn. App. 1994). A district court abuses its discretion when evidence in the record does not support the factual findings, the court misapplied the law, or the court's decision "is against logic and the facts on record." *Foster v. Foster*, 802 N.W.2d 755, 757 (Minn. App. 2011) (quotation omitted).

Here, father opposed the name-change request. When a parent opposes the request, district courts must exercise "great caution" and grant the name change "only where the evidence is clear and compelling that the substantial welfare of the child necessitates such change." *In re Saxton*, 309 N.W.2d 298, 301 (Minn. 1981) (quotation omitted). A name-change request "should be granted only when the change promotes the child's best interests." *Id*. In making this determination, district courts consider: (1) "the child's

2

preference"; (2) "the effect of the change . . . on the preservation and the development of the child's relationship with each parent"; (3) "the length of time the child has . . . a given name"; (4) "the degree of community respect associated with the present and the proposed surname"; and (5) "the difficulties, harassment or embarrassment, that the child may experience from bearing" each surname. *Id.*

Here, the district court analyzed these factors and concluded that: (1) the child did not have a preference; (2) change could "harm the relationship" between the child, father, and father's non-joint children; (3) the child has had her name since birth (for six years); (4) the proposed surname is mother's ex-husband's name, and the child has never met him and has no familial connection to him; and (5) mother claimed that her ex-husband committed domestic abuse and the child should not have to bear this name.

Mother claims that six years is not a long time to have a name and that the child mainly uses just her first name, so she will not need to adjust to a new surname. Mother also claims that the child would associate the new surname with mother, not mother's ex-husband, and the domestic abuse her ex-husband committed "was an isolated incident from 10 or more years ago," and "it was followed by family therapy and healing."

Mother's claims do not contradict the district court's findings that the child has always used just one surname, the child has no connection to mother's ex-husband, and mother's ex-husband committed domestic abuse.

A court-ordered custody-and-parenting-time evaluation was completed in April 2021. The district court found the custody evaluator credible. *See Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988) (stating great deference is given to district court's

3

credibility determinations). In the report, the custody evaluator noted that mother "report[ed] a history of domestic violence" committed by her ex-husband. Mother described her ex-husband as controlling, stated that abuse continued after counseling, and claimed that her ex-husband "despises" her. The record supports the finding that mother's ex-husband committed domestic abuse and provides reason for the child to not be associated with his surname.

The custody evaluator had sought mother's permission to contact mother's ex-husband when she was interviewing individuals in preparing her report. Mother stated that contacting her ex-husband "would not generate anything useful or factual in [the child]'s best interests." Mother contacted the evaluator's supervisor to express her concern "with the inappropriateness of . . . speaking to [her] ex-husband who knew nothing of [her] parenting of [the child]." This shows that mother's ex-husband is not involved in the child's life and supports the district court's denial of the name-change request.

Additionally, the custody evaluator noted that father reported to her that the child once referred to herself using the proposed surname and had told father that people refer to her by that surname in Edina (where she lived with mother). Father was concerned that the reference to the proposed surname was intended "to diminish his role and relationship" with the child. This shows that changing the child's surname could negatively impact her relationship with father.

Because a district court is to exercise "great caution" and grant a name change "only where the evidence is clear and compelling" that change is necessary for the child's

welfare, the district court did not abuse its discretion by denying mother's name-change request. *See Saxton*, 309 N.W.2d at 301.

### *Continuance*

Mother next argues that the district court abused its discretion by denying her a continuance and her motion for a new trial on this basis. *See Torchwood Props., LLC v. McKinnon*, 784 N.W.2d 416, 418 (Minn. App. 2010) (stating this court reviews denial of continuance for abuse of discretion). A district court abuses its discretion when evidence does not support the court's findings, the court misapplied the law, or the decision "is against logic and the facts on record." *Foster*, 802 N.W.2d at 757 (quotation omitted).

In determining whether to grant a continuance, a district court considers "whether a denial prejudices the outcome of the trial." *Chahla v. City of St. Paul*, 507 N.W.2d 29, 32 (Minn. App. 1993), *rev. denied* (Minn. Jan. 20, 1994). After a scheduling order establishes a trial date, "the court shall decline to consider requests for continuance except . . . when a judge determines that an emergency exists." Minn. R. Gen. Prac. 122; *see also* Minn. R. Gen. Prac. 304.06 (applying rule 122 in family-court proceedings).

Here, father initiated the matter in 2020. In October 2020, the district court filed an order for temporary relief, in which it denied father temporary joint custody. In April 2021, the custody evaluator recommended that joint legal and joint physical custody was in the child's best interests. Based on this recommendation, father again moved for temporary joint custody.

On July 21, 2021, the district court filed an order for trial, providing that trial would begin November 3, 2021. The order provided: "No continuances will be granted except

5

for truly extraordinary circumstances—including continuances to obtain a witness or additional evidence, or withdrawal of counsel." Because trial was to begin on November 3, the district court denied father's request for temporary custody.

On August 23, 2021, mother requested a continuance because her expert witness was not available for trial. On September 7, the district court denied mother's request. The district court noted that the case had been pending since May 2020 and father did not have temporary custody of the child. The district court stated that, if it granted a continuance, trial would not commence until March 2022 based on the court's availability, which was nearly two years after father commenced the matter.

On October 11, 2021, mother again requested a continuance, claiming that she was not receiving discovery from father. The district court denied mother's request, ruling that mother's requests for discovery were not reasonable or relevant. But the court amended trial-exhibit and witness deadlines to accommodate mother. On October 25, mother requested amendments to the deadlines, claiming disadvantages of being a pro se litigant. The district court granted mother's request, stating that it "accommodated" mother's requests as much as possible because mother was pro se. But the district court stated that it would not grant any additional continuances or extensions.

The district court acted well within its discretion. The district court did its best to accommodate mother while avoiding prejudice to father. Additionally, mother was aware that continuances would be granted only for "truly extraordinary circumstances." The district court found that these circumstances did not exist because if mother's expert was not available, she could take a deposition of her expert witness or find another expert.

6

Because the district court did not abuse its discretion by denying mother a continuance, it did not abuse its discretion by denying her a new trial on this basis. *See Christie v. Est. of Christie*, 911 N.W.2d 833, 838 (Minn. 2018) (stating that review of district court's denial of new trial is for abuse of discretion).

### *Domestic abuse*

Mother also argues that the district court clearly erred in finding that father did not commit domestic abuse against her non-joint child because the district court misapplied the statutory definition of "household members." *See* Minn. Stat. § 518B.01, subd. 2(b)(4) (2022) (defining "[f]amily or household members" under the domestic-abuse act to include persons who have resided together in the past).

A district court's factual findings are reviewed for clear error. *In re Welfare of J.R.B.*, 805 N.W.2d 895, 901 (Minn. App. 2011), *rev. denied* (Minn. Jan. 6, 2012). A finding is clearly erroneous when there is no reasonable evidence to support the finding or when a reviewing court is left with the definite and firm conviction that the district court made a mistake. *In re Welfare of J.H.*, 844 N.W.2d 28, 35 (Minn. 2014). Deference is given to the district court's credibility determinations. *Sefkow*, 427 N.W.2d at 210.

The parties agree that father "live[d] at the Edina home from January 2016 to January 2017" with mother's non-joint children. Mother suggests that because the district court misapplied the definition of "household members," we "should remand for reconsideration of the domestic abuse question." But even though father and the non-joint children lived together and were household members, the district court found that no domestic abuse occurred. The custody evaluator, whom the district court found credible,

7

stated that she found "no evidence of physical abuse." The district court did not clearly err in finding that domestic abuse did not occur, regardless of whether the court misstated that father and the non-joint children were not household members.

### *Attorney fees*

Finally, mother argues that the district court erred by denying her request for need-based attorney fees. This court reviews the denial of need-based attorney fees for an abuse of discretion. *Gully v. Gully*, 599 N.W.2d 814, 825 (Minn. 1999).

A district court "shall award attorney fees . . . in an amount necessary to enable a party to carry on or contest the proceeding," if it finds that (1) the fees "are necessary for the good faith assertion of the party's rights in the proceeding; (2) the party from whom fees are sought has the means to pay; and (3) the party seeking fees does not have the means to pay them." Minn. Stat. § 518.14, subd. 1 (2022).

In its October 2020 order for temporary relief, the district court denied mother's first request for need-based attorney fees because mother failed to show that she could not pay her fees. The district court noted that mother had been earning an annual salary of $100,000 and has an MBA. The district court was also unpersuaded by mother's budget, finding that many of mother's claimed expenses are "unreasonable."

In March 2021, mother again requested need-based attorney fees for work performed between May and October 2020. On July 21, 2021, the district court denied mother's request. It found that mother waived recovery of fees incurred in May and June 2020, because she failed to request the fees at a motion hearing in July 2020. The district court found that it had denied mother's request for fees incurred between June 24 and July

8

14 in its order for temporary relief, and she failed to provide a "compelling reason" for the court to overturn its decision. The district court denied recovery of fees incurred between July 15 and October 29, 2020, because mother did not show that she could not pay her own fees. The district court again found that mother's claimed expenses were unreasonable.

Mother asserts that the district court erred in denying her request for attorney fees by relying on its October 28, 2020, and July 21, 2021, orders. But in these orders, the district court stated reasons for its finding that mother failed to show that she was not able to pay her fees. The district court appropriately exercised its discretion in denying mother's request for need-based attorney fees.

**Affirmed.**